ORIGINAL
FILED

AUG 1 4 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  Robert S. Coldren, Esq., Bar No. 81710
   John H. Pentecost, Esq., Bar No. 99527
2  Boyd L. Hill, Esq., Bar No.140435
   HART, KING & COLDREN
3  A PROFESSIONAL LAW CORPORATION
   200 Sandpointe, Fourth Floor
4  Santa Ana, California 92707
   Telephone:   (714) 432-8700
5  Facsimile:   (714) 546-7457                    **[E-FILING MANDATORY]**
   jpentecost@hkclaw.com
6
7  Attorneys for Defendant Cal-Am Properties, Inc.        E-filing

8                    UNITED STATES DISTRICT COURT

9        NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

10

11  JOYCE ANDERSON and JASON          )   Case No.
    ANDERSON,                          )
12                                     )   CV 08  3895   JCS
                                       )
13              Plaintiffs,            )
                                       )
14       vs.                           )   CERTIFICATE OF SERVICE OF
                                       )   NOTICE TO ADVERSE PARTY OF
15  CAL-AM PROPERTIES, INC.; CAVCO     )   REMOVAL TO FEDERAL COURT
    INDUSTRIES, INC. and DOES 1-100,   )
16  Inclusive                          )
                                       )
17                                     )
                Defendants.            )
18                                     )
                                       )
19                                     )
                                       )
20                                     )

21

22       Dora Renteria certifies and declares as follows:

23       I am over the age of 18 years and not a party to this action.

24       My business address is 200 Sandpointe, Fourth Floor, Santa Ana, California 92707,

25  which is located in the city, county and state where the mailing described below took place.

26       On August 13, 2008, I deposited in the United States Mail at Santa Ana, California, a

27  copy of the Notice to Adverse Party of Removal to Federal Court dated August 13, 2008 to

28  Counsel for Cavco Industries, Inc. – Rankin, Sproat, Mires, Beaty & Reynolds, a copy of

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

37924.005/4845-1556-0450v.1
CERTIFICATE OF SERVICE OF NOTICE TO ADVERSE PARTY OF REMOVAL TO FEDERAL COURT

which is attached to this certificate.

On August 13, 2008, I deposited in a Federal Express depository – via standard overnight at Santa Ana, California, a copy of the Notice to Adverse Party of Removal to Federal Court dated August 13, 2008 to Counsel for Plaintiffs – Greene, Chauvel, Descalso & Minoletti, a copy of which is attached to this certificate.

I declare under penalty of perjury that the forgoing is true and correct.

Executed on August 13, 2008.

Dora Renteria

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

37924.005/4845-1556-0450v.1

*CERTIFICATE OF SERVICE OF NOTICE TO ADVERSE PARTY OF REMOVAL TO FEDERAL COURT*

1  Robert S. Coldren, Esq., Bar No. 81710
   John H. Pentecost, Esq., Bar No. 99527
2  Boyd L. Hill, Esq., Bar No.140435
   HART, KING & COLDREN
3  A PROFESSIONAL LAW CORPORATION
   200 Sandpointe, Fourth Floor
4  Santa Ana, California 92707
   Telephone:   (714) 432-8700
5  Facsimile:   (714) 546-7457

6  Attorneys for Defendant Cal-Am Properties, Inc.

7

8              SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

9                          UNLIMITED JURISDICTION

10

11  JOYCE ANDERSON and JASON          )   Case No.  HG08384678
    ANDERSON,                         )
12                                    )
                                      )
13              Plaintiffs,           )
                                      )
14      vs.                           )   **NOTICE TO ADVERSE PARTY OF**
                                      )   **REMOVAL TO FEDERAL DISTRICT**
15  CAL-AM PROPERTIES, INC.; CAVCO    )   **COURT**
    INDUSTRIES, INC. and DOES 1-100,  )
16  Inclusive                         )
                                      )
17                                    )
                Defendants.           )
18                                    )
                                      )
19                                    )

20  TO  PLAINTIFFS  JOYCE  ANDERSON  and  JASON  ANDERSON,  THEIR

21  ATTORNEYS OF RECORD:

22         PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. sections 1441 and 1446,

23  defendant CAL-AM PROPERTIES, INC. ("Cal-Am"), which is one of the only two existing

24  named defendants in the action filed in the Superior Court of the State of California in and

25  for the County of Alameda (Case No.: HG08384678 entitled *JOYCE ANDERSON and*

26  *JASON ANDERSON, plaintiffs, vs. CAL-AM PROPERTIES, INC.; CAVCO INDUSTRIES,*

27  *INC. and DOES ONE through ONE HUNDRED, inclusive, Defendants*"), has filed in the

28  United States District Court for the Northern District of California a **Notice of Removal** of

A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

1

1 | the above-entitled action.

2 |     A true and correct copy of the Notice of Removal filed in the United States District

3 | Court for the Northern District of California is attached hereto as Exhibit "A".  Cal-Am's

4 | Notice of Removal is joined by the other named defendant, CAVCO INDUSTRIES, INC.

5 | ("Cavco")  A copy of Cavco's Joinder in Notice of Removal is attached hereto as Exhibit

6 | "B".

7 | Dated:  August 13, 2008                    HART, KING & COLDREN

8

9

10 |                By: _____

11 |                   Robert S. Coldren, Esq.
                  John H. Pentecost, Esq.

12 |                   Boyd L. Hill, Esq.
                  Attorneys for Defendant Cal-Am Properties, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

2

# EXHIBIT "A"

1  Robert S. Coldren, Esq., Bar No. 81710
   John H. Pentecost, Esq., Bar No. 99527
2  Boyd L. Hill, Esq., Bar No.140435
   HART, KING & COLDREN
3  A PROFESSIONAL LAW CORPORATION
   200 Sandpointe, Fourth Floor
4  Santa Ana, California 92707
   Telephone:  (714) 432-8700
5  Facsimile:   (714) 546-7457                        [E-FILING MANDATORY]
   jpentecost@hkclaw.com
6
   Attorneys for Defendant Cal-Am Properties, Inc.
7

8              UNITED STATES DISTRICT COURT

9     NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

10

11 JOYCE ANDERSON and JASON        )   Case No.
   ANDERSON,                       )
12                                 )
                                   )
13            Plaintiffs,          )
                                   )   NOTICE OF REMOVAL OF ACTION
14    vs.                          )   PURSUANT TO 28 U.S.C. SECTION
                                   )   1441(b) [FEDERAL QUESTION]
15 CAL-AM PROPERTIES, INC.; CAVCO  )
   INDUSTRIES, INC. and DOES 1-100,)
16 Inclusive                       )
                                   )
17            Defendants.          )
                                   )
18                                 )
                                   )
19 _____)

20 TO THE CLERK OF THE ABOVE-ENTITLED COURT:

21        PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. sections 1441 and 1446,

22 defendant CAL-AM PROPERTIES, INC. ("Cal-Am"), one of the only two existing named

23 defendants in the action filed in the Superior Court of the State of California in and for the

24 County of Alameda (Case No.: HG08384678 entitled *JOYCE ANDERSON and JASON*

25 *ANDERSON, Plaintiffs, vs. CAL-AM PROPERTIES, INC.; CAVCO INDUSTRIES, INC. and*

26 *DOES ONE through ONE HUNDRED, inclusive, Defendants*"), hereby removes this action

27 to the United States District Court for the Northern District of California, based on the

28 following grounds:

A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

1.    On or about April 29, 2008, counsel for plaintiffs initiated this action with the filing of a Complaint for Damages (the "Complaint") in the Superior Court of the State of California, in and for the County of Alameda, entitled "*JOYCE ANDERSON and JASON ANDERSON, Plaintiffs, vs. CAL-AM PROPERTIES, INC.; CAVCO INDUSTRIES, INC. and DOES ONE through ONE HUNDRED, inclusive, Defendants*", Case No. HG08384678.  A true and correct copy of the Complaint is attached hereto as Exhibit "A".

2.    The Complaint and Summons were served by notice and acknowledgement on Cal-Am, with the acknowledgement executed on behalf of Cal-Am on July 16, 2008.  The Complaint and Summons were served by notice and acknowledgement on Defendant Cavco Industries, Inc., with the acknowledgement executed on behalf of Cavco on July 16, 2008.  This Notice of Removal is the first paper or pleading that any of the defendants have filed in this action.  This Notice of Removal will be filed within 30 days after defendants received and became aware of the allegations of the Complaint.  A true and correct copy of the Summons served on Cal-Am is attached hereto as Exhibit "B".

3.    Jurisdiction.  As the Complaint reflects, plaintiffs' claims are that defendants committed various wrongful acts and/or breaches of warranty in reference to the manufacture and sale of their manufactured home, including violating the federal statute known as the Magnuson-Moss Warranty Act, codified at 15 U.S.C. section 2301(3) (hereinafter, referred to as "Warranty Act").   Among other remedies, the Complaint seeks rescission and restitution of the entire purchase price of $171,392.00.  Thus, this action is a civil action of which this court has original jurisdiction under 28 U.S.C. section 1331, and is one which may be removed to this Court by defendants pursuant to the provisions of 28 U.S.C. section 1441(a), in that plaintiffs' claims, as pled in the Complaint, involve claims that arise under a federal statute, the Warranty Act.  While the claim under the Warranty Act is the only federal claim pled by plaintiffs, this court has supplemental jurisdiction over the remaining claims asserted against defendants pursuant to 28 U.S.C. section 1367(a) in that they are so related to the Warranty Act claim that they form part of the same case or controversy.

4.    All named defendants join in and agree with the removal of this action as

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

1   indicated by the Cavco Joinder in Notice of Removal filed concurrently herewith.

2      5.      Fewer than 30 days will have elapsed between the time that defendants learned

3   of and received a copy of the Complaint and the date that this Notice of Removal will be

4   filed such that this matter is removable to this Court (see 28 U.S.C. §1446(b)).

5      6.      Counsel for defendant Cal-Am has signed this Notice of Removal pursuant to

6   Federal Rule of Civil Procedure 11.

7      WHEREFORE, defendant respectfully requests that this action be removed to this

8   Court.

9

10  Dated: August 13, 2008                              HART, KING & COLDREN

11

12

13                                      By: _____

14                                          Robert S. Coldren, Esq.
                                            John H. Pentecost, Esq.
15                                          Boyd L. Hill, Esq.
                                            Attorneys for Defendant Cal-Am Properties,
16                                          Inc.

17

18

19

20

21

22

23

24

25

26

27

28

A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

3

# EXHIBIT "A"

1  PAUL G. MINOLETTI, ESQ./SBN 118192
   BRANDON L. REEVES, ESQ./SBN 242897
2  GREENE, CHAUVEL, DESCALSO & MINOLETTI
   155 Bovet Road, Suite 780
3  San Mateo, CA 94402
   Telephone: (650) 573-9500
4  Facsimile: (650) 573-9689

5  Attorneys for Plaintiffs
6  JOYCE ANDERSON and JASON ANDERSON

7

8

9        IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
                        UNLIMITED JURISDICTION
10              IN AND FOR THE COUNTY OF ALAMEDA

11

12  JOYCE ANDERSON and JASON          )  Case No.
    ANDERSON,                         )
13                                    )  HG08384678
              Plaintiffs,             )  COMPLAINT FOR DAMAGES
14  vs.                               )
                                      )  (1)    BREACH OF CONTRACT -
15  CAL-AM PROPERTIES, INC.; CAVCO    )         PURCHASE ORDER;
    INDUSTRIES, INC. and DOES ONE     )  (2)    BREACH OF WARRANTY;
16  through ONE HUNDRED, inclusive,   )  (3)    NEGLIGENCE;
                                      )  (4)    MISREPRESENTATION
17            Defendants.             )
                                      )
18  _____  )

19

20        Plaintiffs JOYCE ANDERSON and JASON ANDERSON complain and allege against

21  Defendants and each of them as follows:

22                        GENERAL ALLEGATIONS

23        1.    Plaintiffs JOYCE ANDERSON and JASON ANDERSON (referred to herein as

24  "Plaintiffs") are, and at all times herein mentioned were, residents of Alameda County.

25        2.    Plaintiffs are and were at all times herein mentioned, the "Buyer" and

26  "Consumer" within the meaning of Commercial Code §2103, Civil Code §1791(b) and Health

27  and Safety Code §18002.3 respectively, of the subject "Goods" as defined in Commercial Code

28  §2105, Civil Code §1791(a). The "Goods" are described more specifically as a "Manufactured

---

Home" within the meaning of Health and Safety Code §§ 18007 and 18009, and "Manufactured home accessory buildings or structures," as set forth in Health and Safety Code §18008.5 and purchased new from Defendant CAL-AM PROPERTIES, INC. named herein.

3.    At all times herein mentioned, the "manufactured home and manufactured home accessory buildings or structures" (collectively referred to as "The Home") are a "New Manufactured Home" as defined in Health and Safety Code §18009.

4.    At all times herein mentioned, Plaintiffs were consumers who purchased the subject new manufactured home, accessory buildings and structures in good faith for personal and family use.

5.    Plaintiffs are informed and believe, and on that basis allege, that Defendants CAL-AM PROPERTIES, INC. and DOES 1 through 10 are, and at all times herein mentioned were, corporations licensed to do business, and doing business, in the State of California.

6.    Plaintiffs are informed and believe, and on that basis allege that at all times herein mentioned, Defendants CAL-AM PROPERTIES, INC. and DOES 7 through 20 are doing business as "Dealers" as defined in Health and Safety Code §18002.6, "Licensees" as described in Health and Safety Code §18006, "Retailers" as defined in Health and Safety Code §18012, Civil Code §1791(l) and "Sellers" as set forth in Commercial Code §2103, respectively, of the manufactured home and accessory buildings or structures.

7.   Plaintiffs are informed and believe, and on that basis allege, that Defendants CAVCO INDUSTRIES, INC. and DOES 21 through 30 are, and at all times herein mentioned were, corporations licensed to do business, and doing business, in the state of California.

8.   At all times herein mentioned, Defendants CAVCO INDUSTRIES, INC. (Hereinafter "CAVCO") and DOES 21 through 30 manufactured the home and sold it to Defendant CAL-AM PROPERTIES, INC.  Defendants, CAVCO and DOES 21 through 30 are "manufacturers" within the meaning of California Civil Code § 1791(j), California Health and Safety Code § 18006.3 and "sellers" as defined in California Commercial Code § 2103(d).

9.    At this time, Plaintiffs do not know the true names or capacities of the Defendants that have been sued as DOES 1 through 100, and Plaintiffs therefore sue such Defendants by

Complaint for Damages

1    such fictitious names. Plaintiffs believe that each of the Defendants designated by a fictitious

2    name is in some manner legally responsible for the events and happenings described in this

3    Complaint, and caused damages proximately and foreseeably to Plaintiffs as herein alleged.

4       10.     At all relevant times, each of the Defendants was the agent, servant, employee,

5    partner, aider and abetter, co-conspirator and/or joint venturer of each of the remaining

6    Defendants, and was at all times operating and acting within the purpose and scope of said

7    agency, service, employment, partnership, conspiracy and/or joint venture, and rendered

8    substantial assistance and encouragement to the other Defendants, knowing that their conduct

9    constituted a breach of duty to Plaintiff.

10      11.     On or about July 23, 2007, Plaintiffs entered into a written Manufactured Home

11    Purchase Agreement (Hereinafter "Agreement") to purchase a new 2007 CAVCO manufactured

12    home, Model DBS1386A, to be located at the Southlake Mobile Home Park, 103 Brook Terrace

13    Fremont, CA 94538, from Defendants CAL-AM PROPERTIES, INC. and DOES 1 through 20.

14    The purchase price of $171,392.00 (One hundred seventy-one thousand, three hundred ninety

15    two dollars and no cents) was to include certain manufactured home accessory buildings or

16    structures, upgrades, sales tax, foundation system, tie downs, delivery, setup, HCD fees, escrow

17    fees and document fees, but most of these included items were not itemized on the Purchase

18    Order as required by law. Plaintiffs are not experts in manufactured homes, home inspections or

19    construction and relied upon the representations of both Brian Pierce, as the Salesperson, and Joi

20    Gonzales as the Sales Manager for Defendant CAL-AM PROPERTIES, INC. to properly

21    construct, assemble, set up and install the new manufactured home properly and in accord with

22    applicable codes and regulations. Defendant certified on the Purchase Order that the home

23    would be properly installed by a qualified contractor and that the contractor would be Reich's

24    Manufactured Home Installation, Inc.

25      12.     Attached hereto as Exhibit 1 and incorporated by reference, as if fully set forth

26    herein, is a true and correct copy of the Manufactured Home Purchase Agreement.

27      13.     In agreeing to pay the monetary consideration and completing the purchase,

28    Plaintiffs understood and expected that the subject new manufactured home was free from

1  defects, and was designed, manufactured, assembled, constructed and installed in a workmanlike

2  manner. Had they known that the contrary was true, Plaintiffs would not have entered into the

3  Purchase Agreement and made the purchase from Defendants. Plaintiffs performed all of their

4  obligations under the purchase agreement as Defendant CAL-AM PROPERTIES, INC. was paid

5  in full for the home at the close of escrow on or about September 6, 2007.

6      14.     Plaintiffs took possession of the manufactured home after the closing of escrow

7  on or about September 6, 2007.

8      15.     Prior to taking possession of the manufactured home during the initial walk

9  through of the home, on or about August 14, 2007, Plaintiffs notified Defendant CAL-AM

10  PROPERTIES, INC., or its designated agents by telephone, in person, and in writing of certain

11  substantial defects in materials or workmanship such as broken, ripped, cracked, stained, or

12  missing parts or components as installed or manufactured by the contractor, dealer, or

13  manufacturer, in particular that the home was not properly assembled or installed as set forth in

14  paragraph 16, below.

15      16.     Beginning on or about October 20, 2007 and continuing thereafter, Plaintiffs hired

16  consultants and inspectors to explain the problems and discovered that the home was not

17  properly installed, the soils were not properly compacted, the grading does not allow for proper

18  drainage and water accumulates under the home. The ventilation and foundation system are

19  inadequate, specifically including defects in the installation of the home which, by engaging the

20  services of experts and consultants familiar with the construction and installation of

21  manufactured homes in this area, Plaintiffs are now informed that the subject manufactured home

22  was improperly designed, manufactured, assembled and installed. Plaintiffs have also discovered

23  through these experts and consultants, since October 20, 2007, that the probable cause of the

24  problems and defects in the subject home is because it is not properly assembled or installed,

25  lacks adequate support, lacks proper soils preparation, lacks proper soil compaction, lacks proper

26  site drainage, lacks proper grading, and lacks vapor barriers all of which have resulted in

27  consequential damages to various component elements of the structure. The home continues to

28  suffer ongoing consequential damages and progressive deterioration from the improper assembly

Complaint for Damages                    -4-

1  and installation by Defendants and/or their agents. Plaintiffs have now retained an independent

2  building inspector and an engineer to inspect the subject home and have discovered, and continue

3  to discover, various other defects in the design, manufacture, assembly, and installation of the

4  new manufactured home and components.

5      17.    Plaintiffs notified Defendants or their agents, including Plaintiffs' Salesperson

6  Brian Pierce, and Joi Gonzales, Sales Manager, of CAL-AM PROPERTIES, INC., Mike

7  Edwards, Service Manager for Defendant CAVCO, Larry Reich of Reich's Manufactured Home

8  Installation, Inc. and Ron Van Wambeke of Rovan Construction and all of them, orally and in

9  writing, of the defective conditions from August 14, 2007 through the date of the filing of this

10  complaint, without satisfactory repairs.

### FIRST CAUSE OF ACTION
(Breach of Contract - Manufactured Home Purchase Agreement)
Against Defendant CAL-AM PROPERTIES, INC.

13      18.    Plaintiffs hereby incorporate herein by reference as if fully set forth herein, each

14  and every allegation contained in Paragraphs 1 through 17, inclusive, of this Complaint.

15      19.    On or about July 23, 2007, Plaintiffs entered into a written Manufactured Home

16  Purchase Agreement (Hereinafter "Agreement") to purchase a new 2007 CAVCO manufactured

17  home, Model DBS1386A, to be located at the Southlake Mobile Home Park, 103 Brook Terrace

18  Fremont, CA 94538, from Defendants CAL-AM PROPERTIES, INC. and DOES 1 through 20.

19  The purchase price of $171,392.00 (One hundred seventy-one thousand, three hundred ninety

20  two dollars and no cents) was to include certain manufactured home accessory buildings or

21  structures, upgrades, sales tax, foundation system, tie downs, delivery, setup, HCD fees, escrow

22  fees and document fees, but most of these included items were not itemized on the Purchase

23  Order as required by law.  Plaintiffs are not experts in manufactured homes, home inspections or

24  construction and relied upon the representations of both Brian Pierce, as the Salesperson, and Joi

25  Gonzales as the Sales Manager for Defendant CAL-AM PROPERTIES, INC. to properly

26  construct, assemble, set up and install the new manufactured home properly and in accord with

27  applicable codes and regulations.  Defendant certified on the Purchase Order that the home

28  would be properly installed by a qualified contractor and that the contractor would be Reich's

---

1  Manufactured Home Installation, Inc.

2      20.    Attached hereto as Exhibit 1 and incorporated by reference, as if fully set forth

3  herein, is a true and correct copy of the Manufactured Home Purchase Agreement.

4      21.    Defendants covenanted that the new manufactured home and accessory structures

5  would be complete, of good quality, and free from faults and defects.

6      22.    Defendants breached said Contract in that the home and accessory structures are

7  incomplete, do not comply with applicable codes, are unsafe and defective in their as built

8  condition.

9      23.    Defendants also breached said Contract because the entire manufactured home

10  and components are improperly installed, do not comply with applicable codes, and jeopardize

11  the health and safety of occupants of the manufactured home.

12      24.    Beginning on or about October 20, 2007 and continuing thereafter, Plaintiffs hired

13  consultants and inspectors to explain the problems and discovered that the home was not

14  properly installed, the soils were not properly compacted, the grading does not allow for proper

15  drainage and water accumulates under the home.  The ventilation and foundation system are

16  inadequate, specifically including defects in the installation of the home which, by engaging the

17  services of experts and consultants familiar with the construction and installation of

18  manufactured homes in this area, Plaintiffs are now informed that the subject manufactured home

19  was improperly designed, manufactured, assembled and installed.  Plaintiffs have also discovered

20  through these experts and consultants, since October 20, 2007, that the probable cause of the

21  problems and defects in the subject home is because it is not properly assembled or installed,

22  lacks adequate support, lacks proper soils preparation, lacks proper soil compaction, lacks proper

23  site drainage, lacks proper grading, and lack vapor barriers all of which have resulted in

24  consequential damages to various component elements of the structure.  The home continues to

25  suffer ongoing consequential damages and progressive deterioration from the improper assembly

26  and installation by Defendants and/or their agents. Plaintiffs have now retained an independent

27  building inspector and an engineer to inspect the subject home and have discovered, and continue

28  to discover, various other defects in the design, manufacture, assembly, and installation of the

1    new manufactured home and components.

2         25.    As a proximate result of the breach of Contract by Defendants, and each of them,

3    Plaintiffs have suffered damages in excess of the jurisdictional limit of this Court including, but

4    not limited to, the costs to repair the defective conditions; the cost to repair and replace property

5    damaged by said defective conditions; diminution in the value of the manufactured home and

6    accessory buildings; loss of full use and enjoyment of the manufactured home and accessory

7    buildings; residual stigma damages; special damages; general damages; costs of experts and

8    consultants retained to investigate the defective conditions; and, attorney's fees and costs

9    incurred to pursue Plaintiffs' claims.

10        26.    Due to the fact that Plaintiffs will continue to suffer substantial and irreparable

11   harm and injury under the Agreement if it is not rescinded in that, as a result of Defendants'

12   conduct, Plaintiffs will be deprived of their bargain and will have a home that is substantially

13   different from, and inferior to, the one they bargained and paid for and intended to purchase.  On

14   or about February 12, 2008, Plaintiffs served Defendants CAL-AM PROPERTIES, INC. and

15   CAVCO with a Notice of Demand for Rescission and Restitution.  A true and correct copy of the

16   Notice is attached hereto as Exhibit 2.  Defendants rejected and denied plaintiffs' Demand on

17   March 14, 2008.

18        27.    Accordingly, Plaintiffs intend service of the summons and complaint in this action

19   to serve as the second notice of rescission of the Agreement, and hereby demands that

20   Defendants restore to them the consideration furnished by Plaintiffs, specifically the sum of

21   $171,392.00 plus all costs incurred by Plaintiffs in connection with the purchase of the home, the

22   value of any improvements made by Plaintiffs, any amounts expended by Plaintiffs in attempted

23   repairs, before discovering that the defects in the home were more substantial than Plaintiffs

24   realized, such that Plaintiffs would not have entered into the Agreement had Plaintiffs known of

25   the nature and extent of such defects, less the reasonable value to the Plaintiffs of the use of the

26   home, plus costs of experts and consultants, incidental expenses, and costs and attorneys' fees

27   incurred herein.

28        WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

---

Complaint for Damages                              -7-

## SECOND CAUSE OF ACTION
### (Breach of Warranty)
### Against Defendants CAL-AM PROPERTIES, INC. and CAVCO INDUSTRIES, INC.

### Count 1 - Willful Violation of the Song-Beverly Consumer Warranty Act

28.     Plaintiffs hereby incorporate herein by reference as if fully set forth herein, each and every allegation contained in Paragraphs 1 through 27, inclusive, of this Complaint.

29.     At the time of the purchase of the home, Defendant manufacturer CAVCO and Defendant Dealer CAL-AM PROPERTIES, INC., and its Salesperson Bruce Pierce, and Sales Manager Joi Gonzales, represented to Plaintiffs in a writing entitled "Mobilehome/Manufactured Home Warranty" that the home was "free from any substantial defects in materials or workmanship." In fact the subject home is substantially defective in that the home was not properly installed, the site was not properly graded for drainage and water accumulates under the home, the soils were not properly compacted, the interior walls are cracked, the floors are loose and not level due to improper set-up and the home suffers from a faulty foundation system.

30.     Beginning on or about October 20, 2007 and continuing thereafter, Plaintiffs hired consultants and inspectors to explain the problems and discovered that the home was not properly installed, the soils were not properly compacted, the grading does not allow for proper drainage and water accumulates under the home.  The ventilation and foundation system are inadequate, specifically including defects in the installation of the home which, by engaging the services of experts and consultants familiar with the construction and installation of manufactured homes in this area, Plaintiffs are now informed that the subject manufactured home was improperly designed, manufactured, assembled and installed.  Plaintiffs have also discovered through these experts and consultants, since October 20, 2007, that the probable cause of the problems and defects in the subject home is because it is not properly assembled or installed, lacks adequate support, lacks proper soils preparation, lacks proper soil compaction, lacks proper site drainage, lacks proper grading, and lacks vapor barriers all of which have resulted in consequential damages to various component elements of the structure.  The home continues to suffer ongoing consequential damages and progressive deterioration from the improper assembly and installation by Defendants and/or their agents. Plaintiffs have now retained an independent

1  building inspector and an engineer to inspect the subject home and have discovered, and continue

2  to discover, various other defects in the design, manufacture, assembly, and installation of the

3  new manufactured home and components.

4      31.    These defects and the cause of the defects were known and evident to Defendants

5  and their agents, employees, contractors, and warranty contractors when they inspected the home

6  beginning on August 14, 2007 and continuing thereafter until the filing of this action but the

7  information on the cause of the defects was withheld from Plaintiffs until Plaintiffs were forced

8  to retain their own consultants and experts in October 2007. Since October 2007, Plaintiffs have

9  discovered that the problems and defects are actually caused by the improper site preparation,

10  set-up, assembly and installation of the home. Accordingly, unless the homesite and foundation

11  systems are repaired or replaced, the home will continue to suffer consequential damages, and

12  deterioration which are cumulative and ongoing.

13      32.    Plaintiffs are informed and believe and thereon allege that the above-mentioned

14  representation that the home was "free from any substantial defects in material or workmanship,"

15  was intended by Defendants to result in the above-mentioned sale of the manufactured home to

16  Plaintiffs, and Plaintiffs allege that the above-mentioned purchase of the manufactured home was

17  made in reliance on, and as a result of, the representations of Defendants that such manufactured

18  home was "free from any substantial defects in materials or workmanship" and that the

19  Defendants further certified to Plaintiffs that the home would be properly set-up, installed, and

20  assembled by a licensed and qualified contractor that being Reich's Manufactured Home

21  Installation, Inc.

22      33.    Plaintiffs are informed and believe and thereon allege that the above-mentioned

23  misrepresentations were willful and intentional violations of the provisions of the Health &

24  Safety Code §18004.6 and §18035.3, the Song-Berly Consumer Warranty Act, Civil Code

25  §1790 *et seq.,* not the result of a bona fide error notwithstanding the use of reasonable procedures

26  adopted to avoid any such error.

27      34.    That instead of performing the appropriate and necessary repairs to correct,

28  replace, or otherwise rectify the substantial defects in the materials and workmanship,

1   construction, installation, and assembly of the subject manufactured home, Defendants or their

2   agents or employees attempted to blame Plaintiffs or others in an effort to appease Plaintiffs and,

3   at the same time, to disguise and conceal from Plaintiffs the actual cause of these defects, which

4   is the improper site preparation, construction, installation, and assembly of the subject

5   manufactured home.

6        35.    Defendants, CAL-AM PROPERTIES, INC. and CAVCO or their agents have

7   unsuccessfully repaired or attempted to repair the home and continuously promised to repair the

8   manufactured home, thereby tolling the running of the statutory warranty accompanying the sale

9   of the manufactured home, accessories and structures pursuant to Civil Code §§ 1795.6 and

10  1795.7.

11       36.    Plaintiffs are informed and believe and thereon allege that at the time of sale of

12  the manufactured home and accessory structures, Defendants CAL-AM PROPERTIES, INC. and

13  CAVCO expressly warranted that the manufactured homes and accessory structures were fit for

14  their intended use as a residence and were free of latent and concealed defects.

15       37.    Plaintiffs are informed and believe and thereon allege that said warranties were

16  false and untrue in that the damages and substantial defects listed in this Complaint have

17  surfaced and are continuing and cumulative and that Defendants CAL-AM PROPERTIES, INC.

18  and CAVCO , and DOES ONE THROUGH TWENTY-ONE, willfully violated the Song-

19  Beverly Consumer Warranty Act which entitles Plaintiffs to a civil penalty of two (2) times the

20  amount of actual damages.

21       38.    As a proximate result of the Breach of Warranty by Defendants, and each of them

22  Plaintiffs have suffered damages in excess of the jurisdictional limit of this Court including, but

23  not limited to, money expended on the purchase of the home, plaintiffs seek a full refund of the

24  costs incurred in the purchase of the home and all other costs and expenses incidental thereto, the

25  costs to repair the defective conditions; diminution in the value of the manufactured home and

26  accessory buildings; loss of full use and enjoyment of the manufactured home and accessory

27  buildings; residual stigma damages; special damages; general damages; costs of experts and

28

1  consultants retained to investigate the defective conditions; and attorney's fees and costs incurred
2  to pursue Plaintiffs' claims.

3        WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

4  ### Count 2 - Breach of the Implied Warranty of Merchantability,
5  ### Song-Beverly Consumer Warranty Act

6        39.    Plaintiffs reallege and incorporate by reference herein each and every allegation
7  set forth in paragraphs 1 through 38.

8        40.    Plaintiffs purchased the new 2007 CAVCO manufactured home with the
9  reasonable expectation that the home was fit to be used for the ordinary and intended purpose of
10 providing Plaintiffs with a reliable and safe home for habitation.  Defendants CAL-AM
11 PROPERTIES, INC. and CAVCO knew when the home was manufactured, assembled, installed
12 and sold, that the home's intended and ordinary purpose was to provide its owner with a reliable
13 and safe home for habitation.

14       41.    At all times that Plaintiffs have had possession of the subject home, Plaintiffs
15 used it for the intended and ordinary purpose of habitation for their family's personal and family
16 use.

17       42.    However, the home is not fit for the ordinary purposes for which it was sold.  It is
18 in fact defective, as set forth above, and not fit to provide Plaintiffs with a dependable, safe home
19 for habitation.

20       43.    As a direct and proximate result of Defendant's violation of their obligations
21 under the Song-Beverly Consumer Warranty Act, Plaintiffs have suffered actual, consequential
22 and incidental damages, and are entitled to reject the home and demand a refund, including but
23 not limited to money expended on the purchase of the home, lost interest, damages associated
24 with the inconvenience suffered as a result of the failure of the home to perform properly, the
25 loss of use of the home during at the time it will require for repairs, the cost of repairs related to
26 these defects, loss of wages, other incidental and consequential damages, and costs and attorney's
27 fees which Plaintiffs have incurred and will continue to incur in order to protect their rights in
28 this matter.  The precise amount of these damages is unknown at the present time.  Attorney's

1  fees, costs, loss of use, interest and other damages continue to accrue.

2      44.   Under California Civil Code §1794(d), Plaintiffs are also entitled to recover a sum

3  equal to the aggregate amount of their costs and expenses, including attorney's fees. As a

4  proximate result of Defendants' misconduct as alleged herein, and in an effort to protect their

5  rights, Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection

6  therewith.

7      WHEREFORE, Plaintiffs pray for judgment including actual damages as established

8  according to proof at trial pursuant to Civil Code §1794, attorney's fees and costs, and such other

9  relief as hereinafter set forth.

10  ## Count 3 – Violation of the Magnuson-Moss Warranty Act

11      45.   Plaintiffs reallege and incorporate by reference as though fully set forth herein

12  each and every allegation contained in paragraphs 1 through 44, inclusive.

13      46.   Plaintiffs are a "consumer" as defined in the Magnuson-Moss Warranty Act

14  (hereinafter to as "Warranty Act," 15 U.S.C. §2301(3).

15      47.   Defendants CAL-AM PROPERTIES, INC. and CAVCO and DOES 1 through

16  100 are "suppliers"or "warrantors" as defined in the Warranty Act, 15 U.S.C. §2310(4) and (5).

17  Plaintiffs are informed and believe, and thereupon allege, that DOES 1 through 5 are "suppliers"

18  or "warrantors" as defined in the Warranty Act.

19      48.   The manufactured home herein above described is a "consumer product" as

20  defined in the Warranty Act, 15 U.S.C. §2301(1) because it is normally used for personal or

21  household purposes.

22      49.   The express warranty more fully described herein above pertaining to the

23  manufactured home is a "written warranty" as defined in the Warranty Act, 15 U.S.C. §2301(6).

24  Under California law there was created in connection with the purchase of the home an implied

25  warranty of merchantability.

26      50.   The actions of Defendants as herein above described, in failing to tender the

27  manufactured home to Plaintiffs free of defects and refusing to properly repair or replace the

28  defective manufactured home tendered to Plaintiffs, or to refund the purchase price to Plaintiffs,

1   constitute breach of the written and implied warranties covering the manufactured home and

2   hence violation of the Magnuson-Moss Act.

3        51.    Plaintiffs have performed all things agreed to and required of them under the

4   purchase agreement and warranties, except as may have been excused or prevented by the

5   conduct of Defendants as herein alleged.

6        52.    As a direct and proximate result of the acts and omissions of Defendants as set

7   forth above, Plaintiffs have been damaged in an amount in excess of the jurisdictional limit of the

8   Court.

9        53.    The Magnuson-Moss Warranty Act, 15 U.S.C. §2310(d)(2), entitles Plaintiffs to

10   recover as part of the judgment costs and expenses of the suit including attorney's fees based on

11   actual time expended.  As a proximate result of the misconduct of Defendants as alleged herein

12   and in an effort to protect their rights, Plaintiffs have incurred and continues to incur legal fees,

13   costs and expenses.

14       WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

15               **THIRD CAUSE OF ACTION**

16                (Negligence)
      **Against Defendants CAL-AM PROPERTIES, INC. and CAVCO**

17        54.    Plaintiffs hereby incorporate herein by reference as if fully set forth herein, each

18   and every allegation contained in Paragraphs 1 through 53, inclusive, of this Complaint.

19        55.    As a separate cause of action against all Defendants, Plaintiffs allege that

20   Defendants owed a duty to Plaintiffs to exercise ordinary care in performing their respective

21   functions, duties, responsibilities, work and services in the design, site preparation, soils

22   compaction, grading, installation, construction, assembly, manufacture and sale of the

23   manufactured home, components, and accessory structures.

24        56.    Beginning on or about October 20, 2007 and continuing thereafter, Plaintiffs hired

25   consultants and inspectors to explain the problems and discovered that the home was not

26   properly installed, the soils were not properly compacted, the grading does not allow for proper

27   drainage and water accumulates under the home.  The ventilation and foundation system are

28   inadequate, specifically including defects in the installation of the home which, by engaging the

1   services of experts and consultants familiar with the construction and installation of
2   manufactured homes in this area, Plaintiffs are now informed that the subject manufactured home
3   was improperly designed, manufactured, assembled and installed.  Plaintiffs have also discovered
4   through these experts and consultants, since October 20, 2007, that the probable cause of the
5   problems and defects in the subject home is because it is not properly assembled or installed,
6   lacks adequate support, lacks proper soils preparation, lacks proper soil compaction, lacks proper
7   site drainage, lacks proper grading, and lacks vapor barriers all of which have resulted in
8   consequential damages to various component elements of the structure.  The home continues to
9   suffer ongoing consequential damages and progressive deterioration from the improper assembly
10  and installation by Defendants and/or their agents. Plaintiffs have now retained an independent
11  building inspector and an engineer to inspect the subject home and have discovered, and continue
12  to discover, various other defects in the design, manufacture, assembly, and installation of the
13  new manufactured home and components.

14      57.    Defendants breached their duties of care to Plaintiffs by failing and neglecting to
15  perform their functions, duties, responsibilities, work and services in connection with the design,
16  site preparation, grading, soils compaction, installation, construction, assembly, manufacture and
17  sale of the subject manufactured home, and components and accessory structures, in that they are
18  adversely affected by the defective conditions described in this Complaint, among others.

19      58.    As a direct and proximate result of Defendants' negligence and carelessness and
20  the defective conditions described herein, Plaintiffs have suffered damages in excess of the
21  jurisdictional limit of this Court including, but not limited to, loss of money expended on the
22  purchase of the home, lost interest, the costs to repair the defective conditions; the cost to repair
23  and replace property damaged by said defective conditions; diminution in the value of the
24  manufactured home and accessory buildings; special damages, general damages; loss of full use
25  and enjoyment of the manufactured home and accessory buildings; residual stigma damages;
26  costs of experts and consultants retained to investigate the defective conditions; and costs
27  incurred to pursue Plaintiffs' claims.

28      WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

Complaint for Damages

14

# FOURTH CAUSE OF ACTION
## (Misrepresentation)
### FIRST COUNT
#### (Intentional Misrepresentation)
#### Against Defendant CAL-AM PROPERTIES, INC.

59.    Plaintiffs hereby incorporate herein by reference, as if fully set forth herein, each and every allegation contained in Paragraphs 1 through 58, inclusive, of this Complaint.

60.    At all times herein mention Defendant CAL-AM PROPERTIES, INC., was and now is a manufactured home Dealer duly licensed as such by the State of California, Department of Housing and Community Development.

61.    At all times herein mentioned, the Defendant Dealer, CAL-AM PROPERTIES, INC. employed Brian Pierce as the Salesperson and Joi Gonzales as the Sales Manager of the Defendant Dealer CAL-AM PROPERTIES, INC. and at all times herein mentioned, in doing the things and in making the representations herein alleged, they were acting in the course and scope of their employment or agency, and with the knowledge and consent of their principal.

62.    On or about July 23, 2007, in Alameda County, California, Plaintiffs entered into a written agreement with Defendant CAL-AM PROPERTIES, INC. by and through Defendant's Salesperson Brian Pierce and Sales Manager Joi Gonzales to purchase the above-described manufactured home, a copy of which agreement is attached hereto as Exhibit 1 and made a part hereof.

63.    At the time of the purchase of the home, Defendant CAL-AM PROPERTIES, INC. Dealer and its Salesperson Brian Pierce represented to Plaintiffs in a writing entitled "Mobilehome/Manufactured Home Warranty" that the home was "free from any substantial defects in materials or workmanship." At the time of the sale of the home, Salesperson Brian Pierce also represented to Plaintiffs that the new home would be constructed with cement board exterior siding, that the cement block stem walls would be constructed the full length of the home, that the home would be supported by large steel adjustable piers, that the home would be constructed so that water would not accumulate under the home, that the home site would be properly graded and sloped for drainage,  that issues with the interior paint, cabinets and caulk on the exterior siding would be properly repaired under warranty. The Anderson's were also

1  promised an extended 5 year warranty. The Anderson's relied upon these representations in
2  purchasing the new home and in allowing the various contractors to attempt repairs under the
3  basic warranty.    Plaintiffs are not experts in manufactured homes, manufactured home sales or
4  escrows, manufactured home warranties, home inspections, or construction and relied upon the
5  representations of Brian Pierce as Plaintiffs' Salesperson and Joi Gonzales as the Sales Manager
6  for Defendant CAL-AM PROPERTIES, INC. to properly order, design, construct, assemble, set
7  up and install the new manufactured home properly and in accord with the Purchase Agreement
8  and representations to Plaintiffs, as well as all applicable codes and regulations. Plaintiffs hired
9  consultants and inspectors to explain the problems and discovered that the continuous and
10 cumulative problems with interior cracks and unlevel floors are due to improper site preparation
11 and defective foundation systems installed for the new manufactured home. The site and
12 foundation system are inadequate, specifically including defects in the installation of the home
13 which, by engaging the services of experts and consultants familiar with the construction and
14 installation of manufactured homes in this area, Plaintiffs are now informed that the subject
15 manufactured home was improperly designed, manufactured, assembled and installed. Plaintiffs
16 have also discovered through these experts and consultants, since October 2007, that the
17 probable cause of the problems and defects in the subject home is because it is not properly
18 assembled or installed, lacks adequate support, lacks proper soils preparation, lacks proper soils
19 compaction, lacks proper site drainage and lacks vapor barriers all of which have resulted in
20 consequential damages to various component elements of the structure. The home continues to
21 suffer ongoing consequential damages and progressive deterioration from the improper assembly
22 and installation by Defendants and/or their agents. Plaintiffs have now retained an independent
23 building inspector and an engineer to inspect the subject home and have discovered, and continue
24 to discover, various other defects in the design, manufacture, assembly, and installation of the
25 new manufactured home and components.

26     64.    Plaintiffs are informed and believe and thereon allege that the above-mentioned
27 misrepresentations were intended by Defendant CAL-AM PROPERTIES, INC. through its
28 Salesperson Brian Pierce to result in the above-mentioned sale of the manufactured home to

1  Plaintiffs, and the above-mentioned purchase of the manufactured home was made in reliance on,
2  and as a result of, the representations of Defendants that such manufactured home was free from
3  any substantial defects in materials or workmanship and that the Defendants certified to Plaintiffs
4  that the home would be properly set-up, installed, and assembled by a licensed and qualified
5  contractor, specifically Reich's Manufactured Home Installation, Inc., and that at the time of the
6  purchase of the home, Defendant CAL-AM PROPERTIES, INC., Dealer and its Salesperson
7  Brian Pierce and Sales Manager Joi Gonzales represented to Plaintiffs in a writing entitled
8  "Mobilehome/Manufactured Home Warranty" that the home was "free from any substantial
9  defects in materials or workmanship." Salesperson Brian Pierce also represented to Plaintiffs
10  that the home site would be properly graded and sloped for drainage. Plaintiffs are not experts in
11  manufactured homes, manufactured home sales or escrows, manufactured home warranties,
12  home inspections, or construction and relied upon the representations of Brian Pierce as
13  Plaintiffs' Salesperson and Sales Manager Joi Gonzales for Defendant CAL-AM PROPERTIES,
14  INC. to properly order, design, construct, assemble, set up and install the new manufactured
15  home properly and in accord with the Purchase Agreement and representations to Plaintiffs, as
16  well as all applicable codes and regulations. Plaintiffs hired consultants and inspectors to explain
17  the problems and discovered that the continuous and cumulative problems with interior cracks
18  and unlevel floors are due to improper site preparation and defective foundation systems installed
19  for the new manufactured home. The site and foundation system are inadequate, specifically
20  including defects in the installation of the home which, by engaging the services of experts and
21  consultants familiar with the construction and installation of manufactured homes in this area,
22  Plaintiffs are now informed that the subject manufactured home was improperly designed,
23  manufactured, assembled and installed. Plaintiffs have also discovered through these experts and
24  consultants, since October 2007, that the probable cause of the problems and defects in the
25  subject home is because it is not properly assembled or installed, lacks adequate support, lacks
26  proper soils preparation, lacks proper compaction, lacks proper site drainage and lacks vapor
27  barriers all of which have resulted in consequential damages to various component elements of
28  the structure. The home continues to suffer ongoing consequential damages and progressive

Complaint for Damages

1   deterioration from the improper assembly and installation by Defendants and/or their agents.

2   Plaintiffs have now retained an independent building inspector and an engineer to inspect the

3   subject home and have discovered, and continue to discover, various other defects in the design,

4   manufacture, assembly, and installation of the new manufactured home and components.

5       65.   At the time of the purchase of the home, Defendant CAL-AM PROPERTIES,

6   INC. Dealer and its Salesperson Brian Pierce represented to Plaintiffs in a writing entitled

7   "Mobilehome/Manufactured Home Warranty" that the home was "free from any substantial

8   defects in materials or workmanship." At the time of the sale of the home, Salesperson Brian

9   Pierce also represented to Plaintiffs that the new home would be constructed with cement board

10   exterior siding, that the cement block stem walls would be constructed the full length of the

11   home, that the home would be supported by large steel adjustable piers, that the home would be

12   constructed so that water would not accumulate under the home, that the home site would be

13   properly graded and sloped for drainage,  that issues with the interior paint, cabinets and caulk on

14   the exterior siding would be properly repaired under warranty. The Anderson's were also

15   promised an extended 5 year warranty. The Anderson's relied upon these representations in

16   purchasing the new home and in allowing the various contractors to attempt repairs under the

17   basic warranty.   Plaintiffs are not experts in manufactured homes, manufactured home sales or

18   escrows, manufactured home warranties, home inspections, or construction and relied upon the

19   representations of Brian Pierce as Plaintiffs' Salesperson for Defendant CAL-AM

20   PROPERTIES, INC. to properly order, design, construct, assemble, set up and install the new

21   manufactured home properly and in accord with the Purchase Agreement and representations to

22   Plaintiffs, as well as all applicable codes and regulations. Plaintiffs hired consultants and

23   inspectors to explain the problems and discovered that the continuous and cumulative problems

24   with interior cracks and unlevel floors are due to improper site preparation and defective

25   foundation systems installed for the new manufactured home. The site and foundation system

26   are inadequate, specifically including defects in the installation of the home which, by engaging

27   the services of experts and consultants familiar with the construction and installation of

28   manufactured homes in this area, Plaintiffs are now informed that the subject manufactured home

1  was improperly designed, manufactured, assembled and installed. Plaintiffs have also discovered
2  through these experts and consultants, since October 2007, that the probable cause of the
3  problems and defects in the subject home is because it is not properly assembled or installed,
4  lacks adequate support, lacks proper soils preparation, lacks proper soils compaction, lacks
5  proper site drainage and lacks vapor barriers all of which have resulted in consequential damages
6  to various component elements of the structure. The home continues to suffer ongoing
7  consequential damages and progressive deterioration from the improper assembly and installation
8  by Defendants and/or their agents. Plaintiffs have now retained an independent building inspector
9  and an engineer to inspect the subject home and have discovered, and continue to discover,
10  various other defects in the design, manufacture, assembly, and installation of the new
11  manufactured home and components.

12      66.    Plaintiffs are informed and believe and thereon allege that the above-mentioned
13  misrepresentations were willful and intentional violations of the provisions of the Health &
14  Safety Code §18004.6 and §18035.3, and the Song-Beverly Consumer Warranty Act, Civil Code
15  §1790 et seq., not the result of a bona fide error notwithstanding the use of reasonable procedures
16  adopted to avoid any such error.

17      67.    That instead of performing the appropriate and necessary repairs to correct,
18  replace, or otherwise rectify the above misrepresentations and overcharges and the substantial
19  defects in the materials and workmanship, installation, and assembly of the subject manufactured
20  home, Defendants or their agents or employees attempted to blame the Plaintiffs or others in an
21  effort to appease Plaintiffs and, at the same time, to disguise and conceal from Plaintiffs the true
22  facts and the actual cause of these defects, which is the improper site preparation, installation,
23  and assembly of the subject manufactured home.

24      68.    Defendant CAL-AM PROPERTIES, INC., by and through its Salesperson Brian
25  Pierce and Sales Manager Joi Gonzales, knew when they made these representations concerning
26  the various specifications and requested accessories or upgrades, as well as the quality of the
27  manufactured home, and that the installation contractor was certified by Defendant, to Plaintiffs
28  that these representations were false, and Defendant made the representations with the intent to

Complaint for Damages                    -19-

1  deceive Plaintiffs and to induce Plaintiffs to take the actions herein alleged and with the intent to
2  prevent Plaintiffs from further inquiring into the various specifications and requested accessories
3  or upgrades, as well as quality of the manufactured home or qualifications of the installation
4  contractor.

5      69.   Plaintiffs believed these representations of Defendant CAL-AM PROPERTIES,
6  INC. through its Salesperson Brian Pierce and Sales Manager Joi Gonzales, to be true, and in
7  reliance on these representations Plaintiffs were induced to complete the purchase, via close of
8  escrow, of the above-described manufactured home on July 23, 2007, at a cost of $171,392.00.
9  Plaintiffs would not have purchased the manufactured home herein described and would not have
10 expended the sums herein alleged for the specified upgrades and improvements on the home if
11 they had not relied on these representations by Defendants, CAL-AM PROPERTIES, INC.
12 through its Salesperson Bruce Pierce and Sales Manager Joi Gonzales.

13     WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

14 

## SECOND COUNT
15 **(Negligent Misrepresentation)**

16     70.   Plaintiffs hereby incorporate herein by reference, as if fully set forth herein, each
17 and every allegation contained in Paragraphs 1 through 69, inclusive, of this Complaint.

18     71.   Defendant CAL-AM PROPERTIES, INC. through its Salesperson Brian Pierce
19 and Sales Manager Joi Gonzales, when they made these representations concerning the various
20 specifications and requested accessories or upgrades, as well as the quality of the home and
21 qualifications of the installation contractor to Plaintiffs had no reasonable ground for believing
22 that the representations were true, and Defendants, and each of them, made the representations
23 with the intent to induce Plaintiffs to take the actions herein alleged, and with the intent to
24 prevent Plaintiffs from further inquiring into the various specifications and requested accessories
25 or upgrades, as well as the quality of the home and qualifications of the installation contractor.

26     WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

27 

## THIRD COUNT
**(Suppression of Fact)**

28     72.   Plaintiffs refer to and incorporate, as though fully set forth herein, Paragraphs 1

---

Complaint for Damages

1  through 71, inclusive, of the First Count and Second Count.

2  73.    On or about July 2007 and continuing through February 2008, Defendant Dealer

3  CAL-AM PROPERTIES, INC., it's Salesperson Brian Pierce and Sales Manager Joi Gonzales,

4  and it's agents, employees, and warranty contractors represented to Plaintiffs that they would

5  receive a quality manufactured home, that would be free from substantial defects and

6  workmanship, which would be properly installed by a qualified, licensed and certified contractor,

7  and that any problems or defects with the subject manufactured home would be covered,

8  repaired, replaced, or otherwise rectified by Defendant CAL-AM PROPERTIES, INC., it's

9  agents, employees, and warranty contractors.

10  74.    That instead of performing the appropriate and necessary repairs to correct,

11  replace, or otherwise rectify the substantial defects in the materials and workmanship,

12  installation, and assembly of the subject manufactured home, Defendants or their agents or

13  employees attempted to blame the Plaintiffs or others in an effort to appease Plaintiffs and, at the

14  same time, to disguise and conceal from Plaintiffs the actual cause of these defects, which is the

15  improper site preparation, installation, and assembly of the subject manufactured home.

16  75.    Defendants, and each of them, failed to disclose and suppressed the material facts

17  and important of information herein alleged with the intent to induce Plaintiffs to act in the

18  manner herein alleged in reliance thereon, and with the intent to prevent Plaintiffs from further

19  inquiring into the quality of the manufactured home or the qualifications of the installation

20  contractor.

21  76.    As a proximate result of the misrepresentations by Defendants, Plaintiffs have

22  suffered damages in excess of the jurisdictional limit of this Court including, but not limited to,

23  the costs to repair the defective conditions; diminution in the value of the manufactured home

24  and accessory buildings; loss of full use and enjoyment of the manufactured home and accessory

25  buildings; residual stigma damages; special damages; general damages; costs of experts and

26  consultants retained to investigate the defective conditions; and attorney's fees and costs incurred

27  to pursue Plaintiffs' claims.

28  WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

---

Complaint for Damages                    -21-

## PRAYER

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1. On the First Cause of Action, Plaintiffs pray for judgment against Defendants as follows:

   a. For rescission of the Purchase Agreement and restitution to Plaintiffs according to proof, but in no event an amount less than $200,000.00;

   b. Special and general damages according to proof;

   c. Pre- and post-judgment interest at the rate of 10% from August 20, 2007;

   d. Costs of suit incurred herein;

   e. For attorney's fees;

   f. For consultants' and experts' fees; and,

   g. For such other relief as the Court may deem proper.

2. On the Second Cause of Action Plaintiffs pray for judgment against Defendants as follows:

   a. Special and general damages according to proof;

   b. Pre- and post-judgment interest at the rate of 10% from August 20, 2007;

   c. Costs of suit incurred herein;

   d. For reasonable attorneys' fees;

   e. For consultants' and experts' fees;

   f. Under Court One for a civil penalty of two times Plaintiffs' actual damages; and,

   g. For such other relief as the Court may deem proper.

3. On the Third Cause of Action Plaintiffs pray for judgment against Defendants as follows:

   a. Special and general damages according to proof;

   b. Pre- and post-judgment interest at the rate of 10% from August 20, 2007;

   c. Costs of suit incurred herein; and,

   d. For such other relief as the Court may deem proper.

4. On the Fourth Cause of Action Plaintiffs pray for judgment against Defendants as

follows:

a.    Special and general damages according to proof;

b.    For punitive or exemplary damages according to proof;

c.    Pre- and post-judgment interest at the rate of 10% from August 20, 2007;

d.    Costs of suit incurred herein;

e.    For reasonable attorneys' fees;

f.    For consultants' and experts' fees; and,

g.    For such other relief as the Court may deem proper.

DATED: April 28, 2008

GREENE, CHAUVEL, DESCALSO & MINOLETTI

By: _Paul G. Minoletti_

PAUL G. MINOLETTI
BRANDON L. REEVES
Attorneys for Plaintiffs

EXHIBIT 1

CAL AM PROPERTIES, INC.
3200 Von Karman Ave., Suite 725
Irvine, CA 92612
Phone: (949) 222-5600
DL 1156859

SOUTHLAKE MHP # 128
4343 Auto Mall Parkway
Fremont, CA 94538
Phone: (510) 651-0990

1073532

**NOTICE: THIS FORM IS COPYRIGHTED AND REPRODUCTION OF ALL OR PART IS STRICTLY FORBIDDEN.**

# MANUFACTURED HOME PURCHASE ORDER AND FEDERAL DISCLOSURE STATEMENT

CHASER: Jason Stenlmtregn & Beru Joyce Anderson   DATE: 1-23-07
RESS: 38021 Dundee Common   PHONE: (510) 793-0457
       Fremont   STATE: CA   ZIP:   SALESPERSON: Bria J Pierce

| | MODEL | B. ROOMS | APPROX. (NOT INCL. TOW BAR & EAVES) | | STATUS |
|---|---|---|---|---|---|
| WKO | DBS 1386A | 3 | 53 1W 26 | ☑ NEW ☐ USED | Southlake MHP |
| SERIAL NUMBER | APPROX. DEL. DATE | HUD OR HCD NO.: | | DT. OF MFG | 103 Brook Terrace |
| AZ007-0284 1-1-00 | | AR2326947/48 | 2007 | Fremont Ca. 94538 |

OST OF THE MFD./MBL. HOME EXCLUDES THE LISTED PRICES FOR THESE ITEMS.
L. TOW BAR; $___  WHEELS; $___  WHEEL HUBS; $___  TIRES; $___  AXLES
FD. ORD.   ESCROW OPEN   STK #/OTHER   SQ.FT LIVING AREA 1508 box   **MFD. HOME PRICE** $ 170,810.

ZED ACCESSORIES AND THEIR COSTS: (SEE ADDENDUMS)   USED HOME SALES TAX, IF ANY, (1ST SOLD PRIOR TO 7/1/80) $

Offer Subject to Park Approval.
1- year Factory Warranty
Extended 5 year Warranty Provided by Seller.
Jacuzzi w/ 8 jet to be factory
installed.

| | | |
|---|---|---|
| TOTAL ACCESSORIES (OUTSIDE HOME) | $ | Ind |
| TOTAL MFG. HOME & ACCESSORIES | $ | 170,810 |
| SALES TAX (ITEMS NOT INTEGRAL TO HOME) | $ | |
| FOUNDATION SYSTEM / TIE DOWNS | $ | |
| DELIVERY | $ | |
| SET UP | $ | |
| HCD FEES | $ | 82. |
| INSURANCE PREMIUM (ONLY IF SOLD BY DEALER) | $ | |
| ESCROW FEES | $ | 500. |
| SCHOOL FEES | $ | |
| OTHER / PRE PAID TAXES | $ | |
| DOC. FEE (NOT A GOVERNMENTAL CHARGE) | $ | |
| **1. TOTAL CASH PRICE** | $ | 171,392 |

**DESCRIPTION OF TRADE-IN**

MODEL   BEDROOMS
SERIAL NO.   COLOR
OWING   STATE/NO.
OM:   ACCOUNT NO.
SS/PHONE

FACTURER STATES THAT INSULATION HAS BEEN INSTALLED IN THIS HOME
OWS: (NEW ONLY)

| | TYPE | THICKNESS | 'R' FACTOR |
|---|---|---|---|
| Ceiling | Cellulose | 10.81 | 40 |
| WALLS | Fibriglass | | 19 |
| | Fibriglass | 3 1/2 | 22 |

NG – Unless a charge is included in this Agreement for Public or Property Damage Insurance, Payment for such Coverage ovided by this agreement.

ealer is also licensed as a real estate broker, the sale of ufactured home or mobilehome being installed on a tion system pursuant to Section 18551 may be d in the purchase document for the underlying real y, provided that the requirements of HSC SEC. are met.

| | | |
|---|---|---|
| ALLOWANCE ON TRADE-IN | $ | N-A |
| LESS BAL. DUE ABOVE | $ | 171,392 |
| NET ALLOWANCE | | |
| PAID HEREWITH | $ | 1,000 |
| CASH BEFORE DEL. | $ | 170,392 |
| DESIGNATED DEPOSIT (INC. IN DN. PMT) | $ | 1,000 |
| **2. LESS BUYERS DOWN PAYMENT** | $ | 1,000 |
| **3. UNPAID BAL. ON CASH SALES PRICE** | $ | 170,392 |
| **4. FINANCE CHARGE** | $ | |
| **5. ANNUAL PERCENTAGE RATE** | N/A % | N/A |
| **6. TOTAL PAYMENT AMOUNT** (3+4) | $ | N/A |
| **7. UNPAID BALANCE DUE PRIOR TO DEL.** | $ | N/A |
| **8. TOTAL DEFERRED PAYMENT PRICE** (2+6) | $ | N/A |

PAYABLE AS FOLLOWS:

THE DEALER CERTIFIES THAT THE INSTALLATION CONTRACTOR IS:
ichMcAnan's LIC. # 301349
S ADDRESS Co Camino Vista
ta Cruz   CA ZIP 95065
tor is required by law to be licensed and regulated by the
rs State License Board, PO B

In the event the manufactured home cannot be delivered "and/or" inspection completed within the agreed delivery time due to nonperformance by the buyer, buyer agrees to one of the following at the option of the seller, either (1) to pay $___ charges per day until a manufactured home is in

*Offer Subject to Parts Approval.*

*31-year Factory Warranty.*

*Extended 5 year Warranty Provided by Seller.*

*Fireplace w/ 8 jets to be factory installed.*

| | |
|---|---|
| TOTAL ACCESSORIES (OUTSIDE HOME) | $ *Incl.* |
| TOTAL MFG. HOME & ACCESSORIES | $ *170,810* |
| SALES TAX (ITEMS NOT INTEGRAL TO HOME) | $ |
| FOUNDATION SYSTEM / TIE DOWNS | |
| DELIVERY | |
| SET UP | |
| HCD FEES | |
| INSURANCE PREMIUM (ONLY IF SOLD BY DEALER) | $ *82.00* |
| ESCROW FEES | |
| SCHOOL FEES | $ *500.00* |
| OTHER / PRE PAID TAXES | |
| DOC. FEE (NOT A GOVERNMENTAL CHARGE) | |
| **1. TOTAL CASH PRICE** | $ *171,392 00* |
| ALLOWANCE ON TRADE-IN $ *N-A* | |
| LESS BAL. DUE ABOVE $ *171,392 00* | |
| NET ALLOWANCE | |
| PAID HEREWITH $ *1,000* | |
| CASH BEFORE DEL. $ */170,392* | |
| DESIGNATED DEPOSIT $ *1,000* (INC. IN DN. PMT) | |
| **2. LESS BUYERS DOWN PAYMENT** | $ *1,000* |
| **3. UNPAID BAL. ON CASH SALES PRICE** | $ *170,392* |
| **4. FINANCE CHARGE** | $ *N/A* |
| **5. ANNUAL PERCENTAGE RATE** *N/A* % | |
| **6. TOTAL PAYMENT AMOUNT** (3+4) | $ *N/A* |
| **7. UNPAID BALANCE DUE PRIOR TO DEL.** | $ *N/A* |
| **8. TOTAL DEFERRED PAYMENT PRICE** (2+6) | $ *N/A* |

**DESCRIPTION OF TRADE-IN**

| | MODEL | | BEDROOMS |
|---|---|---|---|
| NO. | SERIAL NO. | | COLOR |
| NT OWING | | ACCOUNT NO. | |

VHOM:

RESS/PHONE

ANUFACTURER STATES THAT INSULATION HAS BEEN INSTALLED IN THIS HOME LLOWS: (NEW ONLY)

| TYPE | THICKNESS | 'R' FACTOR |
|---|---|---|
| *Cellulose* | *10.81* | *40* |
| IOR WALLS *Fiberglass* | | *19* |
| *Fiberglass* | *3 ½* | *22* |

NING – Unless a charge is included in this Agreement for Public ity or Property Damage Insurance, Payment for such Coverage provided by this agreement.

e dealer is also licensed as a real estate broker, the sale of nufactured home or mobilehome being installed on a dation system pursuant to Section 18551 may be ded in the purchase document for the underlying real erty, provided that the requirements of HSC SEC. 5.3 are met."

THE DEALER CERTIFIES THAT THE INSTALLATION CONTRACTOR IS:

*Reich Mc Anna*  DS LIC. # *301,349*

ESS ADDRESS *660 Camino Vista*

*Santa Cruz* CA ZIP *95065*

ntractor is required by law to be licensed and regulated by the ctors State License Board, P.O. Box 26000 Sacramento, CA 95827.

PAYABLE AS FOLLOWS:

In the event the manufactured home cannot be delivered "and/or" inspection completed within the agreed delivery time due to nonperformance by the buyer, buyer agrees to one of the following at the option of the seller, either (1) to pay $ charges per day until a manufactured home installation acceptance or certificate of occupancy is obtained, in addition to all other consideration owing or (2) pay the sum of $ in lieu of total consideration.

**TO BUYER:** (A) DO NOT SIGN THE PURCHASE AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK ES TO BE FILLED IN. (B) YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THAT EMENT AND, IF PURCHASING A MANUFACTURED/MOBILE HOME COVERED BY A WARRANTY, A COPY WARRANTY. Complaints concerning the purchase shall be referred to the dealer and, if purchasing a manufactured/mobile home covered by a warranty, a copy epartment of Housing and Community Development, Division of Codes and Standards, Occupational Licensing, Post Office Box 31, nto, California 95812-0031 (telephone (800) 952-5275). A failure to disclose pursuant to this section shall not be the basis for of a conditional sale contract.

nufactured Home that I am purchasing will be used as a residence. I further certify that I understand that if subject Manufactured Home for any purpose other than a residence, I may be liable, to the State Board of Equalization, for the tax measured by the amount pursuant to this certificate.

ASER: *Beryl J Anderson x*   DATE *8/20/07*

RECEIPT OF A FILLED-IN COPY OF THIS AGREEMENT IS HEREBY ACKNOWLEDGED BY PURCHASER hase Order is subject to credit approval and is not binding unless signed by an authorized representative of seller. Purchaser certifies that he is of , and agrees to sign a Security Agreement according to the terms herein. In the event payoff figures on a trade-in toward the purchase of a ured or Mobile Home are more than quoted by the Purchaser, the Purchaser hereby agrees to pay this excess on demand.

LL TERMS AND CONDITIONS SET FORTH ON THE REVERSE OF THIS AGREEMENT ARE INCORPORATED HEREIN AND ARE ULLY APPLICABLE AS THOSE SET FORTH ON THE FRONT SIDE OF THIS AGREEMENT.

PURCHASER: *Beryl J Anderson*

PURCHASER: *Lynn Anderson*

ZED REPRESENTATIVE OF DEALER DATE: *8/20* 20 *07*

EXHIBIT 2

LAW OFFICES OF

# GREENE, CHAUVEL, DESCALSO & MINOLETTI

A PROFESSIONAL CORPORATION
155 BOVET ROAD, SUITE 780
SAN MATEO, CALIFORNIA 94402
TELEPHONE: (650) 573-9500
FACSIMILE: (650) 573-9689
WWW.GREENECHAUVEL.COM
E-MAIL: MAIL@GREENECHAUVEL.COM

RONALD C. CHAUVEL
MICHAEL G. DESCALSO†
PAUL G. MINOLETTI
DAVID D. KIM
BRANDON L. REEVES
MARTIN E. HARBAND •
SUSAN J. BAYERD •

• OF COUNSEL
† BOARD CERTIFIED TRIAL
SPECIALIST    NATIONAL BOARD
OF TRIAL ADVOCACY

RAYMOND A. GREENE, JR
(1931-1997)

SAN JOSE OFFICE
1625 THE ALAMEDA, SUITE 700
SAN JOSE, CALIFORNIA 95126
TELEPHONE: (408) 271-3670
FACSIMILE: (650) 573-9689

Reply To: San Mateo Office

February 12, 2008

Brian Pierce, Salesperson
CAL-AM Homes
4343 Auto Mall Parkway
Fremont, CA  94538

Vincent Gabrielli, C.O.O.
CAL-AM Properties, Inc.
1853 Ives Avenue
Oxnard, CA   93033-1813

Mike Edwards
Service Manager
CAVCO Durango Division
2502 West Durango
Phoenix, AZ 85009

## NOTICE OF DEMAND FOR RESCISSION AND RESTITUTION

RE:   **Jason & Joyce Anderson**
**Southlake Mobilehome Park**
**103 Brook Terrace, Fremont, CA**
**Serial #CAVZD 07-0284**

Dear Sirs:

This correspondence shall serve as Jason Anderson and Joyce Anderson's Demand for Rescission of the Purchase and Restitution of the sales price and incidental expenses related to the subject manufactured home because the subject manufactured home is substantially defective in manufacture, construction, assembly or installation.  The Anderson's believe the home to be irreparable and do not believe that they could ever sell the home having to disclose so many defects.

LAW OFFICES OF
GREENE, CHAUVEL, DESCALSO & MINOLETTI

CAL-AM Properties, Inc.
CAL-AM Homes
CAVCO Durango Division
February 12, 2008
Page 2

## BACKGROUND

The Anderson's originally purchased the new home on April 6, 2007. At that time, salesperson Brian Pierce represented that the new home would be constructed with cement board exterior siding, that the cement block stem walls would be constructed the full length of the home, that the home would be supported by large steel adjustable piers, that the home would be constructed so that water would not accumulate under the home, that issues with the interior paint, cabinets and caulk on the exterior siding would be performed under warranty. The Anderson's were also promised an extended 5 year warranty. The Anderson's relied upon these representations in purchasing the new home and in allowing the various contractors to attempt repairs under the basic warranty.

On July 23, 2007, the Anderson's entered into a Purchase Order with Dealer CAL-AM Properties, Inc. for the cash purchase of a new home manufactured by CAVCO Industries, Inc. The total cash price paid, including installation, accessories, delivery, set up, taxes and fees was $171,392.00. Various representations were made about the size and quality of the home, including the assembly and installation of the home, which induced the Anderson's to purchase the home. As set forth below, the representations were not true. Escrow closed and Jason Anderson moved into his new home on or about September 6, 2007.

During the initial walk through and after moving into the home, the Anderson's discovered a number of significant defects. On August 14, 2007, the Anderson's reported 46 various problems with the new home. See attached lists. On August 20, 2007, the Anderson's reported 12 problems. On August 29, 2007, the Anderson's reported 23 more problems. On September 4, 7, 17 and 20, 2007, the Anderson's reported 28 more problems with the home. See attached lists. On September 24, 2007, the Anderson's reported standing water under the home. See attached lists. Attempts to repair by CAL-AM or their agents were ineffective. Water collects under the home and wet, saturated soils remain under the home.

On October 4, 2007, the Anderson's reported the water collecting under the home, as well as 10 other defects. On October 10, 2007, the Anderson's reported a roof or skylight leak and again reported water accumulation under the home. See attached lists.

On January 17, 2008, the Anderson's again wrote to you after receiving a telephone call from HCD Inspector Lyle Curry that all warranty work has been "completed". This was not true and the letter sets forth the numerous continuing problems, copy enclosed. Once again, CAL-AM failed to repair the home and the Anderson's have suffered significant emotional upset, stress and anxiety over the continued problems, excess moisture under the home, exposure to

LAW OFFICES OF
GREENE, CHAUVEL, DESCALSO & MINOLETTI

CAL-AM Properties, Inc.
CAL-AM Homes
CAVCO Durango Division
February 12, 2008
Page 3

water intrusion, and lack of concern or assistance in the repair of the defective home or defective components by either CAL-AM or CAVCO.

The Anderson's are frustrated with the inability of CAL-AM or CAVCO to properly correct the defects in the home or replace the home or defective components as required under the warranty and by law. The Anderson's have no confidence in the home or the involved contractors. The Anderson's have been forced to, and at this point, have no other desire than to rescind the transaction entirely and have their money refunded.

During the course of our investigation into the manufacture and installation of this home, it has been discovered that the defects are far more serious and substantial than previously suspected. Not only is the home subject to excess moisture from leaks and/or water intrusion through the building envelope, there was no grading for drainage performed and water collects beneath the home to the point where the soils are saturated, we are also concerned that the stem walls are not adequately engineered or properly installed.

The excess moisture and water under the home have caused the Anderson's concerns that this home is not suitable for living normally and they do not believe that the home or the lot can be repaired to insure elimination of the excess moisture under the home and have genuine concerns over damage due to the excess moisture in the floors, walls, insulation and framing of the structure in the future. The home is not even marketable by the Anderson's because all of these defects would need to be disclosed.

In addition to the problems and defects related to the construction and installation of the home, the Anderson's firmly believe that the subject home was misrepresented in that sales representatives Brian Pierce and Joi Gonzales represented that the home had 1,508 square feet of living area when it only has 1,386 square feet of living area; that the exterior siding and skirting was fiber cement and "will last forever" when it was, in fact, a wood product; that all of the adjustable steel foundation piers were much larger and different than the actual steel piers and concrete blocks installed; that the stem walls would extend the entire length of the home and do not; that water would not get under the home; that the walk-through repairs would be completed in a timely and workmanlike manner; that the lot was properly graded for drainage when it was not; that everything would be repaired or replaced under warranty and it was not done.

The extreme disappointment and suffering, as well as listings of the extensive defects and problems associated with the purchase of the home are summarized in a letter dated September 8, 2007, from the Anderson's to Cory Sukert of CAL-AM Properties. Copy enclosed.

LAW OFFICES OF
GREENE, CHAUVEL, DESCALSO & MINOLETTI

CAL-AM Properties, Inc.
CAL-AM Homes
CAVCO Durango Division
February 12, 2008
Page 4

# ANALYSIS OF LIABILITY

## A. Breach of Contract

*Authority:* CACI 303 (Breach of Contract - Essential Elements) - "The essential elements of such a claim are: (1) the existence of a valid contract between the parties; (2) Plaintiff's performance; (3) Defendant's unjustified or unexcused failure to perform; and, (4) damages to Plaintiff caused by the breach."

*Case Law:* Troensegaard v. Silvercrest Industries, Inc. (1985) 175 Cal.App.3d 218 [220 Cal.Rptr. 712] (defective mobile home); Drouin v. Fleetwood Enterprises (1985) 163 Cal.App.3d 486 [209 Cal.Rptr. 623] (defective motor home).

*Facts:* On April 6, 2007 and again on July 23, 2007, the Anderson's entered into a written Purchase Order (hereinafter "Contract") to purchase a new CAVCO Manufactured Home, located at 103 Brook Terrace, Fremont, CA (hereinafter "CAVCO Manufactured Home"), from Dealer CAL-AM for occupancy by the Anderson's as primary residence for Jason Anderson and his family. The purchase price of $171,392.00 included set-up and installation by CAL-AM.

In addition, it was represented by CAL-AM and it is implied in the contract that the new home and accessories would be properly assembled and installed by CAL-AM and free of substantial defects. CAL-AM selected and certified that the installation contractor on the contract was to be Reich Manufactured Homes represented to be a qualified contractor with 35 years of experience. By selling a defective home to the Anderson's, CAL-AM breached the contract. When the defects were timely discovered and reported by the Anderson's, neither CAL-AM nor CAVCO properly repaired the defects in a timely and workmanlike manner. The home remains substantially defective.

## B. Breach of Written and Statutory Warranty (Civil Code §1794, et seq. Title 15 U.S.C. §2301, et seq. and Commercial Code §2314

*Authority:* Written Warranty. The Defendant manufacturers, dealers, and sellers provided the Anderson's an express, written warranty on the new manufactured home. In said express warranty, you warranted:

Your new home, including the structure, plumbing, heating and electrical systems installed by the manufacturer, is warranted under normal use to be free from manufacturing defects in material or

LAW OFFICES OF
GREENE, CHAUVEL, DESCALSO & MINOLETTI

CAL-AM Properties, Inc.
CAL-AM Homes
CAVCO Durango Division
February 12, 2008
Page 5

workmanship. Any such defects will be repaired or replaced at Cavco's direction. This warranty extends to the first retail purchaser and begins on the date or original retail delivery and extends for a period of one year from that date. This Warranty covers only those defects that become evident within the applicable warranty period, as set forth above, and where notice was given to the selling dealer or the manufacturer not later than ten (10) days after the expiration of the warranty period.

Further, when the Dealer failed to properly repair or replace to correct the defects, CAVCO should have repaired or replaced, as necessary, to correct the defects, as set forth in the Owners Manual:

Dealer's Obligations: By agreement with the manufacturer, the dealer is obligated at no charge to the owner to repair or replace any parts necessary to correct defects in material or workmanship, or will forward the complaint to the manufacturing plant for resolution of the problem.

If the Dealer Does Not Resolve the Problem: which the owner is convinced is covered by the Warranty, he should contact Cavco Industries, Inc. at the address on the cover and provide in writing a description of the problem and the attempts made to resolve it.

Manufacturer's Obligations: Upon receipt of notice of a claim, where the dealer was unable to resolve the problem, the manufacturer will repair or replace any parts necessary to correct defects in material or workmanship, or will take other appropriate action as may be required.

Song-Beverly Act: "All new mobilehomes and manufactured homes sold to a buyer shall be covered by the warranty set forth in this chapter." (CC §1797)

Magnuson-Moss Act: . . . a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief. . . if a consumer finally prevails in any action brought he or she may be allowed by the court to recover as part of the judgment a

LAW OFFICES OF
GREENE, CHAUVEL, DESCALSO & MINOLETTI

CAL-AM Properties, Inc.
CAL-AM Homes
CAVCO Durango Division
February 12, 2008
Page 6

sum equal to the aggregate amount of cost and expenses (including attorney's fees based on actual time expended) . . .

Commercial Code §2314(1):  Unless excluded or modified a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

"Warranty applicable to Manufacturer, Contractor, and Dealer." (CC §1797.2)

"The warranty...shall be set forth in a separate written document that reprints all of the provisions of this chapter and...shall contain, but is not limited to, the following terms:  (a) that the mobilehome or manufactured home is free from any substantial defects in materials or workmanship; (b) That the contractor, manufacturer, or dealer or any or all of them shall take appropriate corrective action at instances of substantial defects in materials or workmanship which become evident within one year from the date of delivery of the mobilehome or manufactured home...; (c)  "That the manufacturer and the contractor or dealer shall be jointly and severally liable to the buyer for the fulfillment of the terms of warranty, and that the buyer may notify either one or both of the need for appropriate corrective action in instances of substantial defects in materials or workmanship... and, (g) That, if corrective action taken by the manufacturer or the contractor or dealer fails to eliminate a substantial defect, then the material, system, appliance, or component shall be replaced in kind." (CC §1797.3)

*Facts:*   The Anderson's were promised a new home and accessories properly assembled and installed.  They repeatedly complained, in writing, to both CAL-AM and CAVCO on several occasions about the ongoing drainage and excessive moisture problems.  By failing to correct these defects or replace the defective home or its components, CAL-AM and CAVCO breached both the written warranty and statutory warranties.  Further, CAVCO did not take steps necessary to insure that the warranty repairs would be performed in a timely and workmanlike manner, instead denying responsibility.  See CAVCO correspondence dated June 29, 2007, copy enclosed.

## C. Fraud and Misrepresentation

*Authority:*   CACI 1900 - Intentional misrepresentation, CACI 1901 - Concealment, CACI - 1902 False Promise, CACI 1903 - Negligent Misrepresentation.  Fraud and deceit are defined in Civil Code Sections 1572, 1709 and 1710.  Civil Code §1710 specifies four kinds of deceit, as follows:

LAW OFFICES OF
GREENE, CHAUVEL, DESCALSO & MINOLETTI

CAL-AM Properties, Inc.
CAL-AM Homes
CAVCO Durango Division
February 12, 2008
Page 7

A deceit, within the meaning of §1709, is either:

1.    The suggestion, as a fact, of that which is not true, by one who does not believe it to be true (intentional misrepresentation of fact);

2.    The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true (negligent misrepresentation of fact);

3.    The suppression of fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact (concealment or suppression of fact); or,

4.    A promise, made without any intention of performing it (promissory fraud).

A misrepresentation need not be oral; it may be implied by conduct.  Thrifty-Tell, Inc. v. Bezenek (1996) 46 Cal.App.4th 1559, 1567; 54 Cal.Rptr.2d 468.

*Facts:*  As the Dealer and seller of the new manufactured home and as the captive new home Dealer for the Southlake Mobilehome Park, CAL-AM and its employees and agents had a special relationship with the Anderson's and owed them a fiduciary duty such that CAL-AM should not have misstated or concealed its role in the assembly and installation of the home, the preparation of the lot for the home, the soils conditions, the experience and ability of the installation contractor, the quality of the home, the size of the home, and further owed the Anderson's an affirmative duty to provide to them, as new homeowners, a Mobilehome Park Rental Disclosure form as required by the Mobilehome Residency Law, Civil Code §798.75.5. This disclosure has never been provided to them.

### D.   Costs and Attorney's Fees

*Authority:*   Song-Beverly Consumer Warranty Act.  Magnuson-Moss Warranty Act.

The Song-Beverly Act, Civil Code §1794, provides in pertinent part, as follows:

"(d) If the buyer prevails in an action under this section, the buyer shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action."

LAW OFFICES OF

GREENE, CHAUVEL, DESCALSO & MINOLETTI

CAL-AM Properties, Inc.
CAL-AM Homes
CAVCO Durango Division
February 12, 2008
Page 8

The Magnuson-Moss Act, 15 U.S.C. §2301, et seq. provides in pertinent part as follows: . . . a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief. . . if a consumer finally prevails in any action brought he or she may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorney's fees based on actual time expended) . .

*Facts:*  The Anderson's will undoubtedly prevail in this action under a breach of contract or breach of warranty theory. Costs and fees will multiply significantly if this matter proceed to litigation.

## DAMAGES

As a result of CAL-AM's breach of contract, breach of warranty, numerous misrepresentations, and failure to honor the written warranty and statutory warranty, the clear evidence that the subject home is defective in installation and manufacture, and the failure of CAL-AM or CAVCO to remedy these problems in a timely and workmanlike manner, the Anderson's elect rescission and restitution as the appropriate remedy. The Anderson's want their purchase money refunded along with all incidental expenses.

In summary, CAL-AM has not taken the Anderson's numerous request for repairs seriously, causing them exposure to excessive water accumulating under and around the home and resulting in unhealthy and potentially uninhabitable conditions. This conduct is willful under the Song-Beverly Consumer Warranty Act (Civil Code §1794) and may entitle the Anderson's to recover a civil penalty of up to two times the amount of damages. At this point in time, CAL-AM and CAVCO need to refund the purchase price to the Anderson's, along with all incidental expenses, interest, plus costs and fees incurred.

The Anderson's paid cash in the total sum of $171,392.00 to CAL-AM for the subject home. In addition to the cash price paid for the home, the Anderson's, if forced to proceed with litigation, will seek a refund of monthly space rent, moving expenses (both in and out), refund of sales taxes, cost of insurance, costs of cable and telephone installation, cost of improvements to the home or space, registration cost, interest at the legal rate, a civil penalty of up to two times the actual damages, and all costs and attorneys' fees incurred in pursuing this matter. If CAL-AM proceeds with a "buy back" of the subject home, CAL-AM can then remove, repair or replace the home, as appropriate. Continued delay by CAL-AM to rescind the deal will only increase the Anderson's damage claims.

LAW OFFICES OF
GREENE, CHAUVEL, DESCALSO & MINOLETTI

CAL-AM Properties, Inc.
CAL-AM Homes
CAVCO Durango Division
February 12, 2008
Page 9

To date the Anderson's have incurred the following damages:

| | |
|---|---|
| Purchase Order Cash Payment (Sept. 2007) | $171,392.00 |
| Property Taxes | $     TBD |
| Insurance | $     TBD |
| **Total Purchase Expenses** | $171,392.00 |
| Prejudgment interest (10% legal rate) | +  $     7,855.00 |
| Monthly Space Rent (Effective Sept. 2007)  $950.00 x 5.5 = | $     5,225.00 |
| Moving Expenses (in and out) | $     TBD |
| **Total Damages Including Interest** | $184,472.00 |
| Attorney's Fees to Date (approximate) | $     7,500.00 |
| Legal Costs and Expenses to Date (approximate) | $     3,000.00 |
| Estimated Incidental Expenses | $     5,000.00 |
| **Total Demand** | **$200,000.00** |

This settlement demand is contingent upon your acceptance by February 28, 2008 and agreement to suspend responsibility for payment of the monthly space rent at the Southlake Mobilehome Park effective March 1, 2008, and to hold the Anderson's harmless from any further debt or obligations in that regard. If you proceed with a "buy back" of the subject home, you are responsible for all costs, fees, title insurance, registration, escrow fees and all other costs and fees associated with a "buy back" of the subject manufactured home.

If you need additional documentation, please contact my office.

Sincerely,

*Paul G. Minoletti*

PAUL G. MINOLETTI

PGM:vp
Enclosures
cc:    Jason Anderson
        Joyce Anderson

8/14/08

Brian

# 103 Brook Ter.    ①

## Inside

1. Caulk window above Front Door.

2. Open all windows & clean dirt out From under the windows. Do every Room.

3. Door Bell does not work.

4. Paint All walls in House. The coat of semi-gloss did Not cover the Flat paint under it. The walls are spotted Through out with shiny & Flat paint showing every-where. Also There are nicks, scratches & dirt spots All over The House.

5. Paint All doors That are dirty & nicked up

6. Paint All Baseboards That are dirty & Nicka

7. Fix cracks in walls in Living Room. ~~Living Room,~~ on out side wall.

8. Front door & door From needs paint.

9. Caulk above All doors.

10. Fix Dent in Living Room Ceiling.

11. Caulk Back of Both toilets at Floor.

12. Fix Baseboard in Hall That has chunk missing

8/14/07

Brian

103 Brook Ter.

②

Inside

13 Kitchen cabinets - are chipped & corners don't meet correctly.

14 Black spot on kitchen cabinet, next to Refrigerat

15 Kitchen sky light has loose board, needs Fixing

16 Caulk Kitchen cabinet where it meets dining Rm. total

17 Kitchen cabinet at stove hood - is soft, damaged

18 Dining Room Linoleum has tear, near side window

19 Chip in the tile on front of Bar.

20 Wash Room cabinets has gouges. Upper & Lower corners need fixing.

21 Hall Bath - cabinets corners need Fixing.

22 Hall Bath - caulk around medicine cabinet at Wa

23 Caulk around tile, around tub, in Hall Bath

24 There are ③ defects on Tub Wall in Hall Bath

25 Caulk at Tub & floor, in Hall Bathroom.

26 Caulk Back of toilet in Hall Bath room.

27 Paint on curtains - Hall Bath.

## 103 Brook Ter

Brian

(3)

Inside

☑ (28) 1st Bedroom, closet Doors don't slide.

☑ (29) 1st Bedroom - cracks in wall, under window.
    "        "           in ceiling near window.

(30) All Three Bedrooms need Paint.

(31) Hall needs paint.

(32) Master Bath:

☑   Tub won't drain water.
☑   Scratch on tub near top.
    Paint on tile, grout & cabinets.
    Tile at Front of Right sink has
different colored grout.
    Chips in Tile around Tub.
    Grout around Right sink needs Fixing.
    Needs caulking Behind toilet, at Floor.
    Fix gouge in cabinet, at Left sink,
Behind the door.
    Cabinets have gouges & scratches.
    Crack in Tall cabinet at upper wall.
    Walls need paint.

(33) Turn on water at All Faucets &
check under House For Leaks.

8/24/08

Brian

## 103 BROOK T. R.

### Outside

① ① FRONT PORCH:

✓   Posts - colors don't match.

Ⓝ   Wall siding needs caulking at seams.
Ⓝ   Above Porch, outside & inside —
needs caulking.
Ⓝ   Top of porch, ~~stone~~ at steps, needs
caulking.
Corner of Porch, deck, needs fixing.

② Siding all around house, needs caulking
at seams.

③ Window Trim needs caulking, All windows.

④ Water Heater door, Trim, needs caulking.

⑤ Belly Band needs caulking.

⑥ Wall, at street end, has nail coming out.

⑦ Wood Band, street end, top of house,
Behind Awning, needs caulking

⑧ Wall, left of Porch has 2 holes.

⑨ House needs paint where there is cement
on siding & skirting & where there are
gouges, chips, & scratches.

8/14/04

BRIAN

## 103 Brook Tir

②

### [Outside]

⑩ Rear Porch is Not against house.

⑪ Put edging along sidewalk to keep Bark off sidewalk,

⑫ Cut hole in grass, to open up drain, near neighbors stairs.

⑬ Need Dryer Vent installed, to outside.

8/20/07

## 103 Brook Ter.

① Patch on Front of Porch, deck, is Bad. —

② Front Porch is dirty.

③ Belly Plastic Torn.

④ Where is Air Conditioner drain Pipe?

⑤ Chip in tile on Bar in kitchen.

⑥ Defective tile on Kit. counter at corner — next to fridge.

⑦ Black spot on Kit. cabinet door — next to Fridge.

⑧ Scratch on tub — Master Bath.

⑨ Crack above door in Master Bath.

⑩ Chip in Tile on Master Bath Tub.

⑪ Scratches on tile on Master Bath Tub.

⑫ Hall Bath — 3 defects on Tub — Hall Bath

8/29/08
Brian

103 Brook

Outside

1. Air Conditioner Full of Water from Sprinklers
2. Sprinklers outside are too high — House is Wet
3. Patch on Front Porch needs to Be Redone.
4. Paint Posts on Front Porch to match.
5. Skirting needs caulk at seam next to Front Porch.
6. Drain on Right side needs grass cut off (Hole is covered
7. Paint Front Door.
8. Repair — Patch — Belly Plastic.

Inside

1. Patch on Kitchen/Dining Wall needs Redoing — Texture + Paint.
2. Black spot on cabinet next to Fridge (Right) side.
3. Nick in cabinet — Left side of Fridge.
4. Fix 3 spots on Tub wall in Hall Bath.
5. Kitchen — Edge of cabinet, next to Right side of stove, needs Fixing.
6. Wash-Room — caulk around gas line at Floor
7. Living Room Ceiling — touch up Paint.
8. Wash room — Dryer exhaust — at Floor — Attach hose — correctly
9. Paint in — 2nd Hall Bedroom — Re-do.
10. Master Bath — Patch over Tub — Rt side — Re-do.
11. 2 nicks on Master Bath Tub.
12. chip in tile on Right sink — Master Bath.
13. Master Bath — Shower — scratch in Floor.
14. Both Hall Bedrooms — Remove Plastic From Closet doors — on Track.
15. Fix chip in Tile on Bar.

9/7/07
Brian                    103 Brook Ter

1. Turn Gas on.
2. Turn Water Heater on.
3. Air Conditioner is NOT working.
4. Hook-up Water to Refrigerator.
5. Fix Dryer Vent — inside House!!
6. Turn on Furnace & Stove to check.
7. Clean Front Porch.
8. Ask Bart to turn sprinklers down
   or install "half" sprinklers away From Hou.
   They are spraying over sidewalks
   (front & rear), They are Hitting house
   & water is spraying in vents
   on side of House. The whole side of
   house is being watered, on both sides.

9. Blind in master Bedrm needs Fixing —
   Bar That opens & closes is off.

9/17/07
Brian        103 Brook Ter.

✓① Paint Inside House.
   Paint Front door.

② Clean Front Porch.

③ ~~Paint Posts, on Front Porch, that don't Match.~~

④ ~~Patch hole in Belly Plastic,~~
   Right side of House, near Front.

⑤ Replace chipped tiles.

⑥ Fix defects in cabinets — on 1st List.

⑦ Fix 2 spots in Master Bath Tub.
   Fix 3 spots in Hall Bath Tub.

⑧ Master Bath Shower has scratch on Floor.

⑨ Replace Valance in Hall Bath — has Paint on it.

⑩ Turn Sprinklers down so They are Not
   spraying on walkways, walls, on Front
   porch, and into air vents, on sides of House.

9/20/07
Brian
& Ron

103 Brook Ter.

① Jacuzzi — Cold water Knob does not work.

② Top Trim, on Tall cabinet next to Refrigerator is coming apart. (at Left of Frig.)

③ Edge of Kitchen counter, Right of stove, is coming off.

④ Paint Front Door, inside & out.

9/24/07
Brian

103 Brook Ter.

There is water under The house after The Rain on 9/22/07.
Rain gutter downspouts need extensions away From House.

10/4/07
Brian

## 103 Brook Ter.

① There is No Heater on The Jacuzzi.
4/6/07 Purchase papers state "Jacuzzi with heater"

② Front Porch light does Not work.

③ Rain Down spouts, at street end of House, need extensions or trays to divert water away From house. When it rained on 9/22, water went under house.

④ Paint Front door.

⑤ Top Trim, on tall cabinet, next to the Refrigerator is separating.

⑥ Edge of kitchen ~~counter~~ counter, next to the Stove is coming apart.

⑦ Chipped Tiles have not been replaced.

⑧ Chips, Black mark, etc. on Kitchen & Bath cabinets, have Not been Repaired.

⑨ 2 Defects on Master Bath tub and
3 Defects on Hall Bath tub and
Scratch on Shower Floor, have Not Been Repaired.

⑩ The Valance in The Hall Bath has not been Replaced. It has paint on it.

⑪ Electrical Box.

10/10/07
Brian

# 103 BROOK TER.

_RAIN_ — 10/10/07

① Roof is Leaking.
Water dripping From ceiling
in Kitchen at corner of Skylight.
Ceiling is cracked.

② There is water under The
House.

10/15/07

Brian                    103 Brook Ter.

On 10/10/07 :

Ron caulked around the skylight.
He made a mess on the skylight.
You can see Black caulking all
around the edges of the skylight
from in the kitchen.

Cory Sukert
Cal-Am Properties

9/8/07

Dear Mr. Sukert:

My name is Joyce Anderson and I am the very unfortunate buyer of 148 Coleridge Ter., Fremont, Ca..
I bought the home on April 6, 2006 and my son and his family moved in at the beginning of May.
We have suffered extreme stress and anxiety since buying this house. I do not sleep at night worrying about
all of the problems. I am 66 yrs old and it has been very hard on me. I am on the verge of a nervous break-
down. I cannot talk about this house without crying. My son has been so upset that he has been reduced to
tears when we talk about it. The last five months have become a nightmare for us. I spent my life savings
buying this house for Mike ( and 103 Brook Ter., for my son, Jason ). We bought it in good faith that we
were buying a new home that would last for many years. Instead we have a patched up house, that will
never be right and will continue to give us problems for years to come. It has only brought us pain and
suffering.

I am including copies of the dated lists of problems and repairs needed, that have been turned in to the
office. Some of it is minor repairs. A lot of it is very serious faults. Many of the same items appear over
and over again because they were not done or were only partially done.

Following is a list of the serious problems wrong with the house that we found ourselves or that the
contractors found. This house supposedly was inspected and passed by the state with these obvious things
wrong:

1. Standing water under the house.
2. No lag bolts bolting the house together at the marriage line, only short screws.
3. Many of the jacks ( piers ) were not bolted to the house and not attached to the footings on the ground.
4. Many of the top posts on the jacks are rusted.
5. The sewer line had illegal T-joints.
6. There were cracks and holes in the retaining wall.
7. There were very large holes in the belly plastic, with insulation hanging out on the ground. One large
   area had NO insulation and NO belly plastic. There are holes everywhere.
8. The lot was not properly graded.
9. The large Air and heat duct was laying on the ground.
10. Dirt was piled up against the masonite skirting, which we had been told was cement board, but wasn't.
11. There was untreated wood stakes and supports in the dirt, under the house.
12. The main steel I-Beam, running down the center of the house, was bent out of shape at the front and rear
    of the house. The weld had broken at the joint with the cross beam.
13. The floor, inside the house, down the marriage joint, was higher on one side. It could not be leveled
    because they had used Fix-All patching plaster, trying to level it.
14. The front porch is not level and has a leaning post.
15. There was mold covering the back side of the rear porch and on the inside of the water heater door.

There are people living all around us that saw the house being installed. They saw the standing water under
the house and went to the office to report it and other problems. They were told to mind their own business.
We were told that they were crazy and that there was nothing wrong with the house. It had passed the state
inspection. When neighbors told us about the mold on the back of the rear stairs and the water problem, we
started checking and found many more illegal conditions. Cal - AM had been lying all along. We asked
about # 4, which we had seen with no skirting and being worked on for several months. We were told, by
Brian and Joi , that they were just waiting for their skirting to be delivered. After talking to # 4 about their
problems, we found out that Cal-Am knew all along about the illegal installation work that had been done by
the first contractor and did nothing to correct it before selling the house to us.

From the beginning we were lied to over and over again. We were told that the house was 1508 sq feet.

I asked several times if that was right, because I had owned a home that was 1500 sq feet. We measured it and then went on the internet, and got a copy of the floor plan, and found out it was 1386 sq feet. I specifically asked if the siding was cement board and was told " Yes, the whole house is cement board ". It was not. We were told that all the minor repair and touch-work would be done before the move-in date. It was not. We were promised an extended 5 year warranty and have never received it.

The day Mike moved into the house, the carpet company was installing carpet while Mike was waiting. They could not move in until late afternoon. The contractor was inspecting the house while Mike was moving in.

Our lives have been totally disrupted since Mike moved in. Much of the work has been done, but we have suffered many months of waiting for workers who did not show up when promised. Many times we were promised a work schedule, so we would know when they were coming, but we have never been given one.

Mike works nights, from 4 pm to 4am in the morning and needs to sleep during the day. I had also bought 103 Brook Terrace for my son, Jason. Joi told the contractors to work on 103 in the mornings and 148 after 1 pm when Mike gets up. They did not. Many times they would show up at 148 to work in the morning and wake up Mike. Or they would say they were coming at 1 pm and would not show up at all. Sometimes they would come late in the afternoon or evening and work only a couple of hours. Many weeks they did not come at all. I have had to be there daily, waiting for the workers who were supposed to come and work and did not.

Joi made arrangements for Mike to stay in a Hotel for two weeks, so they could work full time and finish the work. They only worked two full days and two ½ days. Most days they did not come at all or only came for a couple of hours. On four different nights when Mike went to the Hotel he was turned away because the credit card was no good. He was treated like a bum and was humiliated. He would call me at 4 am in the morning in tears. A couple of those times I had him come to my house. I got out of bed so he could sleep and then the workers never showed up at his house.

For months we have had to walk over piles of dirt, all around the house, blocking the front door and we could not even use the rear door. We had neighbors constantly complaining about the piles of dirt, about workers in their yard, trucks blocking the street so they could not get out of their driveway and noise.

In order to solve the marriage line problem, they had to come in and tear up the carpet to fix it. We had to be outside for the whole day, again. Every time they come in to fix all the cracks, we have to be outside all day. This last time they had to fix 35 cracks and sheetrock problems. We are still waiting for the painting to be done, again.

Mike and I have had to crawl under the house four times to see if the jacks had been attached to the house and to see if the belly plastic had been repaired. We had been told that the work had been done, but it was not . Mike took pictures every time we went under the house, when we were told the work was done. He has dated pictures of the same big holes with insulation exposed, that he took each time we went under it.

The state inspector, Frank Gomez, told us and the contractors that they needed to find a way to stop the water from going under the house, from the porch. Two contractors said they could put a block wall between the porch and the house and install a drain under the porch to take the water away. Joi told us it would be done. It was never done. We cannot hose off the porch because water pours through the decking and under the house. When it rains it will go under there also. They did install drains along the outside of the retaining walls.

The lot has never been graded properly.

Because of the fact that the first contractor did not install any lag bolts along the marriage line, under the house, we are very concerned that he also did not install them along the roof joint. We have asked that the

roof joint be inspected, but they have refused to do it.

We have requested , several times, that cement, NOT grass, be installed at the street end of the house, because of the fact that the lot is not graded properly. They installed grass anyway. The ground and grass are much higher outside than it is under the house, at the street end. From the very first day, the sprinkler was running on the grass, it flooded under the house. The ground is now soaking wet, back 10 to 20 feet under the house. We were asked how we wanted the sprinklers to be put in. We asked for then to install them so they would spray away from the house. They did not. The sprinklers on the back side of the house are hitting the house and the air vents. I have asked that they be turned down so they are not hitting the house. That has not been done. Also , when they put the grass in, they cut off the French drain at the corner of the house, so that when it rains all the water from the roof will go directly under the house.

We requested that a cement sidewalk be installed from the front porch around the back side of the house ,to the street end . When we exit out our rear door we have to climb over all of the utility lines, water and sewer lines, to get to the street. We have asked Brian and Joi many times about the cement and they just ignored us and installed grass instead.

The ceiling fans were missing in the living room and bedroom. We were told that we had to install our own. 103 Brook Ter. , came with the fans already installed. We want fans installed by Cal-Am.

It is not bad enough that I have had to spend every day of my life at 148, since May 1,waiting for the contractor who does not show up. Now that my son, Jason, has moved into his house at 103 Brook Ter., I am having to run back and forth between the two houses. I am again waiting for the contractor, who promised to come in the morning and did not Jason moved in. They, also, did not finish the work on 103, before show up until late afternoon. Also , we requested that the sprinklers , on the grass be installed facing away from the house. They were not. They are spraying over the side walks, high on the walls and window and into the air vents on the sides of the house. We cannot walk into the house on either side with out getting soaking wet. I went into the office, soaking wet, and showed Brian, after asking three times to have the sprinklers turned down, or changed so they would sprat away from the house. They were not. The porch was never cleaned after they finished working. Jason moved in with no gas turned on, the water heater not on, no hot water, the stove not working, the air conditioner not working, no water to the refrigerator, the dryer vent not installed correctly, the belly fabric not repaired, the posts on the front porch not painted to match, a poorly done and ugly patch on the front porch, the painting not done on the inside and various other inside repairs not done. Also, there is a serious crack across the sidewalk. We were promised that a wall and drain would be installed between the house and porch to stop water from going under the house. It was not done and Jason cannot hose off his porch.

It is impossible to even begin to convey the great amount of stress and anxiety we have suffered these last five months, and continue to suffer daily. I have only been able to tell a very small part of what we have gone through.

We feel that giving us a cement sidewalk on the side and cement at the street end ,instead of grass, and giving us fans in the living room and master bedroom at 148 Coleridge, would be small compensation for all that we have suffered and continue to suffer

Thank-you,

Joyce Anderson
Mike Anderson
Jason Anderson



June 29, 2007

Field Report by Mike Edwards, Service manager, Cavco Durango Division

Home SN 06-0873

Owner: Joyce Anderson (Residence for Michael Anderson)
Home located at:
Southlake Park
148 Cole Ridge Terrace
Fremont, CA 94538

To all concerned:

On June 26, 2007 I performed a field inspection of the home purchased by Joyce Anderson at Southlake #148. The home is occupied by Mrs. Anderson's son, Mike. Present at the inspection were Ron Rovan, local contractor performing work for Cal-Am and Cavco, Mrs. Anderson and son Mike, and me.

The purpose of my inspection was to determine which items listed in a complaint letter filed by Mrs. Anderson with the California Department of Housing and Community Development are Cavco responsibility. There are certain items contained in the complaint that do not fall under the Cavco warranty. Some of the items involve local codes which are being disputed by the Andersons. As a factory representative, I am not in a position to enforce or determine what is and is not acceptable according to local codes and requirements. Those items will need to be determined by local and state inspectors and Cal-Am.

The items that will be corrected by Ron Rovan under the Cavco warranty are as follows:

1. Check and repair any voids in the undercarriage belly material. There are several areas that need to have the repair tape stapled to the rim joist around the exterior edges. Others in the field areas will need to be properly sealed using high-tack spray adhesive and new belly materials. Stapling will be utilized where feasible.
2. Touch up painting and caulk is needed at several window trim edges and mitres.
3. Some nail heads are not flush with the porch deck planks and need to be driven and slightly countersunk.
4. The horizontal porch rails on the side of the "X" half are sagging and need a support block under the center of the bottom rail.
5. Nail head exposed under front entry lino in the living room.



6. Caulking voids at edge tiles and backsplash tiles at the master bath countertop and corner tub.
7. Caulking voids below master bath mirror
8. Squeak in master bedroom floor at the side of the bed. Possibly a carpet pad squeak and possibly loose floor decking
9. Touch up needed at the corner of the 2nd bedroom closet header trim. Wrong paint used.
10. Black tape exposed under baseboard at master bath near toilet.
11. Paint on 3 valances in the living room.

Those items of concern that do not fall under the terms of the Cavco warranty are as follows:

1. Marriage line floor at the front of the porch is not even from one side to the other. The result is that the center post which is trimmed and finished on site by the set up installers is trimmed unevenly and gapped at the bottom on the "X" half. I recommend unbolting the floor rim joists and adjusting the height of the floors to realign them from one half to the other. This same condition was also noted in several areas on the interior marriage line floor.
2. The front corner of the Cedar Tone floor deck planking was chipped during set-up or delivery and the touch-up paint used is not an exact match. The color variance is also noted at the piece used to close the gap at the front marriage line.
3. Center post trim at the marriage line on the front porch is uneven and slants from one half to the other.
4. The crossover flex duct under the home is not supported off the ground at 48" intervals per the set-up manual.
5. The exterior siding needs to be touched up to seal the siding where the bottom trim band installed by the previous contractor was removed along with the skirting.
6. The interior close off texture is cracked at the marriage line ceiling, and the close off texture does not match the factory texture.
7. Cracks in drywall texture at the corners of several windows.
8. There is no moisture barrier installed on the ground under the home. This is a recommendation *in areas where moisture under the home is a problem* as stated on page I-6 of the Cavco set-up manual. However, it is a recommendation and not a requirement, so it will need to be determined between local code and the agreement reached between the Andersons and Cal-Am as to whether it will be installed under this home. The ground under the home was completely dry and hard during my inspection except for a 3' x 6' area where the hose bib was turned on the driveway side of the home. This area appears to be drying up naturally.
9. There is no stem wall under the home at the back of the front porch to prevent water run-off from under the front porch from going under the home.



10. The sewer line coming out from under the home is not sloped properly and appears to be sagging just before the line drops into the existing outlet. This could cause the drain to clog or back up.

11. The front steel chassis header on the "X" half was slightly damaged in transit and bent back approximately 2" at the marriage line. It does not appear to be affecting the structural integrity of the home. However, the Andersons are asking that the head rail be straightened back to the proper position.

12. The rear end steel chassis crossmember was slightly bent at the bottom flange of the I-beam on the "X" half where the I-beam and crossmember are welded. There is a slight 1" crack in the weld where the two steel members are joined. In my opinion, the cracked weld will not affect the structural integrity of the home in any way. The Andersons are concerned and have asked that the item be corrected. Ron Rovan has agreed to straighten the bottom flange and reweld the void.

There are similar concerns stated by Mrs. Anderson regarding the home she is purchasing for her other son Jason. His home serial number is 07-0284 is located at space 103 in Southlake. Those issues have been conveyed to both the installers and Cal-Am by Mrs. Anderson. They include:

1. Block stem wall around the home was to have continued all the way down the sides of the home to the rear corners.
2. No stem wall under the home to prevent water intrusion under the home from under the porch.
3. The French drains installed with Styrofoam percolating material instead of rock.
4. Marriage line uneven at the floor of the porch on the front end.
5. Window trim color not what was requested. Color was to match facia.
6. Belly patches need to be secured properly.

The above items are not Cavco warranty items. Again, I am not in a position to determine responsibility of the above mentioned items. Cal-Am will settle the issues and perform any alterations or corrections of the items that do not meet code.

I did not enter Jason's home or do an inspection to determine what factory corrections are needed.

As stated above, as a Cavco factory representative, I am not authorized to order Cal-Am or any of its contractors or employees to comply with local or state codes, or the concerns of the Andersons regarding the stem walls, skirting, piers, drainage of the lot, steps or other accessories installed by other entities not contracted by Cavco.

I will however, refer to the recommendations and requirements of the Cavco Set-Up Manual and emphasize those concerns which could negatively affect the warranty provided by Cavco.



Water intrusion under the home is one of the most important concerns as stated in the set-up manual. I would not expect enough water would be used during routine "hosing down" of the porch as normal maintenance to saturate the underside of the home and cause any significant concern. Whether or not the absence of a stem wall between the porch and the crawl space under the home will allow a significant amount of water under the home is debatable according to how much rainfall occurs and if the rain is wind driven enough to saturate the area under the porch..

The set-up manual specifically states that "the slope of the lot shall be graded to prevent water accumulation under the home."
And:
"Cross ventilation of the crawl space must be provided and shall have a net free area of at least 1 square foot for every 150 square feet of floor area.

Ron Rovan will perform the corrections on Mike Anderson's home that are listed as Cavco responsibility. He will also work with Larry Reich to help satisfy the items of concern that are determined to be corrected by Cal Am.

# EXHIBIT "B"

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
CAL-AM PROPERTIES, INC.; CAVCO INDUSTRIES, INC. and
DOES ONE through ONE HUNDRED, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
JOYCE ANDERSON and JASON ANDERSON

```
*6560045*

F I L E D
ALAMEDA COUNTY

APR 2 9 2008

CLERK OF THE SUPERIOR COURT
By  Cecilia Onchundo
                    Deputy
```

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you.  Your written response must be in proper legal form if you want the court to hear your case.  There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is: ALAMEDA COUNTY SUPERIOR
*(El nombre y dirección de la corte es):*
24405 Amador Street
Hayward, CA  94544

CASE NUMBER:
*(Número del Caso):* 0 8 3 8 4 6 7 8

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Paul G. Minoletti                            650-573-9500                    118192
Greene, Chauvel, Descalso & Minoletti
155 Bovet Rd., Suite 780 San Mateo      CA   94402 *Cecilia Onchundo*

DATE:
*(Fecha)* APR 2 9 2008   PAT SWEETEN
                          EXECUTIVE OFFICER/CLERK        Clerk, by _____ , Deputy
                                                         *(Secretario)*                            *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**[SEAL]**

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

    under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
           ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

                                                                                    Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California              **SUMMONS**              Code of Civil Procedure §§ 412.20, 465
SUM-100 [Rev. January 1, 2004]

**POS-015**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Paul G. Minoletti<br>Greene, Chauvel, Descalso & Minoletti           118192<br>155 Bovet Rd., Suite 780<br>San Mateo, CA  94402<br>   TELEPHONE NO.: 650-573-9500   FAX NO. *(Optional)*: 650-573-9689<br>E-MAIL ADDRESS *(Optional)*:<br>  ATTORNEY FOR *(Name)*: Plainffs JOYCE ANDERSON, JASON ANDERSON | *FOR COURT USE ONLY* |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  ALAMEDA
   STREET ADDRESS: 24405 Amador Street
   MAILING ADDRESS: Hayward, CA  94544
   CITY AND ZIP CODE:
   BRANCH NAME: Hayward Hall of Justice

PLAINTIFF/PETITIONER:  JOYCE ANDERSON, JASON ANDERSON

DEFENDANT/RESPONDENT:  CAL-AM PROPERTIES, INC

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>HG08384678 |
|---|---|

TO *(insert name of party being served)*:  CAL-AM PROPERTIES, INC.

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing:  July 16, 2008

PAUL G. MINOLETTI
   (TYPE OR PRINT NAME)       ▶  *[signature]*
                                (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing)*:
1. [X]  A copy of the summons and of the complaint.
2. [X]  Other *(specify)*: ADR Info, CMC Info, Blank CMC Form

*(To be completed by recipient)*:

Date this form is signed:  7-16-08

John H. Pentecost
   (TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,       ▶  *[signature]*
   ON WHOSE BEHALF THIS FORM IS SIGNED)                 (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF<br>                                         ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**  CEB | Page 1 of 1<br>Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange, State of California. I am over the age of 18 years and am not a party to the within action. My business address is 200 Sandpointe, Fourth Floor, Santa Ana, California 92707. On August 13, 2008, I caused the foregoing documents(s) described as: **NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. SECTION 1441(b) [FEDERAL QUESTION]; CIVIL COVER SHEET** to be served on the interested parties in this action as follows:

by placing ☐ the original ☒ a true copy thereof enclosed in sealed envelopes addressed as stated on the ATTACHED SERVICE LIST.

☒ **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U. S. Postal Service on that same day with postage thereon fully prepaid Santa Ana, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in the affidavit.

☒ **BY FEDERAL EXPRESS.** I caused such envelope to be placed for collection and delivery on this date in accordance with standard delivery procedures.

☐ **BY ELECTRONIC TRANSMISSION.** I caused such document to be served on this date by electronic transmission in accordance with standard procedures and to the e-mail address listed on the attached service list.

☐ **BY FACSIMILE:** I caused such document(s) to be transmitted by facsimile transmission from a facsimile transmission machine, at Santa Ana, California, with the telephone number, (714) 546-7457 to the parties and/or attorney for the parties at the facsimile transmission number(s) shown above. The facsimile transmission was reported as complete without error by a transmission report, issued by the facsimile transmission machine upon which the transmission was made. A true and correct copy of the transmission report is attached hereto and incorporated herein by reference.

☐ **BY PERSONAL SERVICE:** I caused such envelope to be delivered by hand to the above-referenced person(s).

☐ [State] I declare under penalty of perjury under the laws of the state of California that the above is true and correct.

☒ [Federal] I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on August 13, 2008, at Santa Ana, California.

_Dora Renteria_
Dora Renteria

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

# SERVICE LIST

1

2

3 Paul G. Minoletti, Esq.                            *Attorneys for Plaintiff Joyce Anderson and*
Brandon L. Reeves, Esq.                          *Jason Anderson*
Greene, Chauvel, Descalso & Minoletti

4 155 Bovet Road, Suite 780
San Mateo, CA  94402

5 Tel.: (650) 573-9500
Fax: (650) 573-9689

6 pminoletti@greenchannel.com

7

8 Kevin R. Mintz, Esq.                              *Attorneys for Defendant Cavco Industries, Inc.*
Bryce Gray, Esq.

9 Rankin, Sproat, Mires, Beaty & Reynolds
1333 Broadway, Suite 600

10 Oakland, CA  94612
Tel.: (510) 465-3922

11 Fax: (510) 452-3006
mintz@rankinlaw.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**HART, KING & COLDREN**
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

7924.005/4830-8962-8162v.1

*PROOF OF SERVICE*

# EXHIBIT "B"

Kevin R. Mintz, Esq. (Bar No. 172299)
Bryce Gray, Esq. (Bar No. 215176)
RANKIN, SPROAT, MIRES, BEATY & REYNOLDS
A Professional Corporation
1333 Broadway, Suite 600
Oakland, CA 94612
Tel: (510) 465-3922 – Fax: (510) 452-3006                **[E-FILING MANDATORY]**

Attorneys for Defendant,
CAVCO INDUSTRIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

JOYCE ANDERSON and JASON
ANDERSON,

              Plaintiffs,

vs.

CAL-AM PROPERTIES, INC.; CAVCO
INDUSTRIES, INC. and DOES 1-100,
Inclusive,

              Defendants.

_____/

Case Number:

**JOINDER IN NOTICE OF REMOVAL OF
ACTION PURSUANT TO 28 U.S.C
SECTION 1441(a)
[FEDERAL QUESTION]**

TO THE CLERK OF THE ABOVE REFERENCED COURT:

      Defendant CAVCO INDUSTRIES, INC. hereby joins in CAL-AM PROPERTIES,

INC.'S Notice of Removal to the United States District Court for the Northern District of

California of the action filed in the Superior Court of the State of California in and for the

County of Alameda (Case No.: HG08384678 entitled "JOYCE *ANDERSON and JASON*

*ANDERSON, plaintiffs, vs. CAL-AM PROPERTIES, INC.; CAVCO INDUSTRIES, INC. and*

*DOES ONE through ONE HUNDRED, inclusive, Defendants"*)

///

///

1   Dated: August 13, 2008.

2

RANKIN, SPROAT, MIRES, BEATY &
REYNOLDS

3

4   By:_____
          Kevin R. Mintz
5           Bryce Gray
          Attorneys for Defendant
6         CAVCO INDUSTRIES, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

I declare that I am employed in the County of Alameda, State of California.  I am over the age of eighteen years and not a party to the within cause.  My employment address is 1333 Broadway, Suite 600, Oakland, California 94612.

On August 13, 2008, I served copies of the attached document entitled: **JOINDER IN NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C SECTION 1441(a)** [FEDERAL QUESTION]on the interested parties in this action, by placing a true and correct copy thereof enclosed in a sealed envelope, addressed as follows:

| | |
|---|---|
| **JOYCE ANDERSON and JASON ANDERSON** | **CAL-AM PROPERTIES, INC.** |
| Paul G. Minoletti, Esq. | John Pentecost, Esq. |
| Brandon L. Reeves, Esq. | Hart, King & Coldren, a PLC |
| Greene, Chauvel, Descalso & Minoletti | 200 Sandpointe, 4th Floor |
| 155 Bovet Road, Suite 780 | Santa Ana, CA 92707 |
| San Mateo, CA 94402 | Tel: (714) 432-8700 |
| Tel: (650) 573-9500 | Fax: (714) 546-7457 |
| Fax: (650) 573-9689 | Email: jpentecost@hkclaw.com |

[XX]    **BY U.S. MAIL.**  I caused such envelope to be placed for deposit in the U.S. Postal Service in a sealed envelope, with postage prepaid, addressed to the above, and that envelope was placed for collection and mailing on that date following ordinary business. (CCP § 1013a(3))

[ ]    **BY FEDERAL EXPRESS.**  I caused such envelope to be deposited in a Federal Express depository at Oakland, California.

[ ]    **BY PERSONAL SERVICE.**  I caused such envelope to be delivered by hand to the offices of the addressee(s).

[ ]    **BY FAX TRANSMISSION.**  Pursuant to Rule 2.306 of the California Rules of Court, I caused such document to be transmitted via facsimile to the offices of the addressee(s).

[ ]    **STATE.**  I declare under penalty of perjury under the laws of the state of California that the above is true and correct.

[XX]    **FEDERAL.**  I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. *[E-FILED/SERVED ON REPRESENTED PARTIES, PURSUANT TO PART III OF GENERAL ORDER 45]*

Executed on August 13, 2008, at Oakland, California.

_Holley A. Hale_
Holley A. Hale

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE

    I am employed in the County of Orange, State of California. I am over the age of 18 years and am not a party to the within action. My business address is 200 Sandpointe, Fourth Floor, Santa Ana, California 92707. On August 13, 2008, I caused the foregoing documents(s) described as: **NOTICE OF ADVERSE PARTY OF REMOVAL TO FEDERAL DISTRICT COURT** to be served on the interested parties in this action as follows:

by placing ☐ the original ☒ a true copy thereof enclosed in sealed envelopes addressed as stated on the ATTACHED SERVICE LIST.

☒ **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U. S. Postal Service on that same day with postage thereon fully prepaid Santa Ana, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in the affidavit.

☒ **BY FEDERAL EXPRESS.** I caused such envelope to be placed for collection and delivery on this date in accordance with standard delivery procedures.

☐ **BY ELECTRONIC TRANSMISSION.** I caused such document to be served on this date by electronic transmission in accordance with standard procedures and to the e-mail address listed on the attached service list.

☐ **BY FACSIMILE:** I caused such document(s) to be transmitted by facsimile transmission from a facsimile transmission machine, at Santa Ana, California, with the telephone number, (714) 546-7457 to the parties and/or attorney for the parties at the facsimile transmission number(s) shown above. The facsimile transmission was reported as complete without error by a transmission report, issued by the facsimile transmission machine upon which the transmission was made. A true and correct copy of the transmission report is attached hereto and incorporated herein by reference.

☐ **BY PERSONAL SERVICE:** I caused such envelope to be delivered by hand to the above-referenced person(s).

☒ [State] I declare under penalty of perjury under the laws of the state of California that the above is true and correct.

☐ [Federal] I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on August 13, 2008, at Santa Ana, California.

                                  _Dora Renteria_

                                  Dora Renteria

A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

24.005/4830-8962-8162v.1

i

# SERVICE LIST

1

2

Paul G. Minoletti, Esq.                          *Attorneys for Plaintiff Joyce Anderson and*
3    Brandon L. Reeves, Esq.                    *Jason Anderson*
Greene, Chauvel, Descalso & Minoletti
4    155 Bovet Road, Suite 780
San Mateo, CA  94402
5    Tel.: (650) 573-9500
Fax: (650) 573-9689
6    pminoletti@greenchannel.com

7
Kevin R. Mintz, Esq.                             *Attorneys for Defendant Cavco Industries, Inc.*
8    Bryce Gray, Esq.
Rankin, Sproat, Mires, Beaty & Reynolds
9    1333 Broadway, Suite 600
Oakland, CA  94612
10    Tel.: (510) 465-3922
Fax: (510) 452-3006
11    mintz@rankinlaw.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28